# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MICHAEL BUSH,

       Plaintiff,

v.

THE WANG CENTER FOR THE PERFORMING
ARTS, INC. d/b/a Boch Center,

       Defendant.

Case No.: 1:22-cv-10473-GAO

## MEMORANDUM IN SUPPORT OF DEFENDANT THE WANG CENTER FOR THE PERFORMING ARTS, INC. D/B/A BOCH CENTER'S MOTION TO DISMISS

This action is one of multiple cases brought in this Court by Michael Bush ("Plaintiff" or "Mr. Bush") seeking to invalidate policies intended to protect the public from the spread of COVID-19.[1] In this iteration of his continued efforts, Plaintiff contends that The Wang Center for the Performing Arts, Inc. d/b/a Boch Center ("The Wang Center" or "Defendant") engaged in wrongful and discriminatory conduct by implementing policies requiring individuals over the age of 12 attending The Wang Center performances and events to wear face masks, demonstrate proof of vaccination, and/or provide negative COVID-19 tests. *See* Compl. ¶¶ 12, 57, 69. Specifically, Mr. Bush alleges that The Wang Center's COVID-19 safety policies discriminated against him on the basis of his "naturally-acquired immunity" and his "contraindication" for mask wearing (which he claims is a "disability") and that the policies caused him to experience "severe anxiety, sadness, humiliation, and despair." Compl. ¶¶ 13, 23, 56.

As a result of this purported misconduct, Mr. Bush has brought a battery of claims against The Wang Center including for breach of contract (Count I), violation of G.L. c. 272 §§ 92A and 98 (Count II), breach of the implied covenant of good faith and fair dealing (Count III), violation of title 18 U.S.C. § 242 and 42 U.S.C. § 1983 (Count IV), misrepresentation (Count V), and violation of G.L. c. 93A (Count VI). As discussed herein, each of these claims fails because: (i) Plaintiff's breach of contract claim is barred by contractual waiver and release provisions and Plaintiff has not identified any provisions that were allegedly breached, (ii) Plaintiff's G.L. c. 272 §§ 92A and 98 claim is premature and does not allege a qualifying "disability," (iii) Plaintiff has not alleged any facts indicating a lack of good faith, or unfair or deceptive conduct on the part of The Wang Center in adopting its COVID-19 policies, (iv) The Wang Center is not a state actor, (v) Plaintiff fails to allege any actionable representation made by The Wang Center concerning its policies that was false at the time it was made, and (vi) The Wang Center is a charitable institution and the facts alleged do not state a Chapter 93A claim.

Thus, The Wang Center respectfully requests that this Court grant its Fed. R. Civ. P. 12(b)(6) motion

---

[1] *See Michael Bush v. Acton-Boxborough Regional School District, et al.*, Case No. 1:21-cv-12039-IT (D. Mass. 2021); *Michael Bush, et al. v. Linda Fantasia, et al.*, Case No. 1:21-cv-11794-ADB (D. Mass. 2021).

to dismiss ("Motion") with prejudice and preclude Mr. Bush from proceeding with his frivolous claims.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must set forth factual allegations "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gaetani v. Hadley*, No. 14-30057-MGM, 2015 U.S. Dist. LEXIS 1952, at *2 (D. Mass. Jan. 8, 2015) (citations omitted). The allegations must actually state a "plausible . . . case for relief," *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010), which "requires the reviewing court to draw on its judicial experience and common sense." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quotes and citation omitted). "[C]onclusory legal conclusions are not credited." *Semmami v. UG2 LLC*, No. 18-cv-12396-DJC, 2019 WL 2249705, at *1 (D. Mass. May 24, 2019) (citations omitted).

Further, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document . . . that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Thus, where a plaintiff's allegations are centered upon an agreement that defines the parties' relationship, the terms of that contract are ripe for examination and enforcement through a Fed. R. Civ. P. 12(b)(6) motion. *See Bagg v. HighBeam Rsch., Inc.*, 862 F. Supp. 2d 41, 44 (D. Mass. 2012) (holding that the court could consider an agreement in ruling on motion to dismiss).

## FACTUAL BACKGROUND

The Wang Center is a nonprofit corporation which provides performing arts entertainment and cultural educational experiences for audiences. Compl. ¶ 2; *see also* The Wang Center's website, available at https://www.bochcenter.org/events/all. Tickets to The Wang Center events may be purchased by customers in a number of ways, including through hyperlinks provided in The Wang Center's promotional emails directing customers to Ticketmaster. Compl. ¶ 5.

In his Complaint, Plaintiff alleges that on July 11, 2021, he "purchased tickets online to the Il Divo 'For Once In My Life' Tour show to be held at the Boch Center Wang Theatre on September 3rd, 2021"

(the "Il Divo Show"). Compl. ¶ 6. Subsequently, on July 25, 2021, Mr. Bush allegedly "[u]s[ed] the hyperlinks in the Boch Center's promotional email messages to Bush," to purchase tickets to the Cirque Dream Holidaze show to be held at the Boch Center Shubert Theatre on December 11, 2021 (the "Cirque Dream Show")." Compl. ¶ 5. Copies of the two tickets purchased by Mr. Bush through Ticketmaster for the Il Divo Show and the Cirque Dream Show (collectively, "The Wang Center Shows") are attached hereto as **Exhibit A** and authenticated by the Affidavit of Michael Szczepkowsi.[2]

### A.    Relevant Ticketmaster Terms and Notices

The tickets purchased by Mr. Bush for The Wang Center Shows state that the "ticket[s] [are] [] revocable license[s] to attend the event listed on the front of the ticket" which are "subject to the full terms found at www.ticketmaster.com." *See* Exhibit A, Mr. Bush's Tickets to The Wang Center Shows. Thus, the tickets may be revoked by The Wang Center, and the terms governing customers' purchase of the tickets found at www.ticketmaster.com (the "Terms") are incorporated by reference and binding on ticket purchasers such as Mr. Bush.

Ticketmaster's Terms are publicly available and accessible to customers via its website and state that customers "[e]xpressly agree to the[] Terms" by "visiting or using [Ticketmaster's] Site." *See* Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US.[3] The Terms contain a number of provisions that apply to the purchase of tickets, including provisions applicable to "Event Organizer[s]" – defined as "those who provide events, such as artists, venues, teams, fan clubs, promoters,

---

[2] Mr. Szczepkowski is the Vice President and General Manager of The Wang Center. *See* Affidavit of Michael Szczepkowski. This Court may consider the tickets for The Wang Center Shows because the "authenticity" of the tickets is not disputable the tickets are "central to plaintiffs' claim[s]," and the tickets are "sufficiently referred to in the complaint." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71–72, 74 (1st Cir. 2014); *see also In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 146 (D. Mass. 2001) ("In evaluating a motion to dismiss, the Court may consider documents pertinent to the action or referenced in the complaint.").

[3] The Terms currently available on Ticketmaster's website state that they were "[l]ast [u]pdated: July 2, 2021," before Mr. Bush purchased tickets for The Wang Center Shows on July 11, and July 25, 2021. *See* Ticketmaster Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US. Therefore, this is the version of the Terms that applies to Mr. Bush's claims. *See Bagg v. HighBeam Rsch., Inc.*, 862 F. Supp. 2d 41, 44 (D. Mass. 2012) (examining only the operative agreement that existed "at the time" of the events at issue on a motion to dismiss); *Lowell Sch. Comm. v. United Teachers of Lowell*, 12 Mass. L. Rep. 672 n.1 (2001) (evaluating only the relevant "language" that was "contained in the version of the agreement in effect at the time" that the "disputes presented").

and leagues."[4]

One such provision provides a waiver and release of liability for Event Organizers like The Wang Center and states:

> "IN NO EVENT WILL [TICKETMASTER] OR [ITS] EVENT ORGANIZERS … BE RESPONSIBLE OR LIABLE TO YOU OR ANYONE ELSE FOR, AND YOU HEREBY KNOWINGLY AND EXPRESSLY WAIVE ALL RIGHTS TO SEEK … DAMAGES OF ANY TYPE … ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE CONTENT, OR ANY PRODUCT OR SERVICE PURCHASED THROUGH THE SITE … REGARDLESS OF WHETHER THE CLAIM IS BASED UPON ANY CONTRACT, TORT, OR OTHER LEGAL OR EQUITABLE THEORY." *Id.*

Ticketmaster's Purchase Policy, which is expressly referenced in, and incorporated by, the Terms, also contains a limitation of liability section.[5] The Purchase Policy's limitation of liability section states that customers "assume all risks, hazards, and dangers arising from or <u>relating in any way to</u> the risk of contracting … COVID-19 … and … waive any and all claims and potential claims against Ticketmaster, Live Nation, and the Event Organizer . . . relating to such risks, hazards, and dangers." (emphasis added)[6]

In addition to the liability disclaimer expressly incorporated in the Terms, Ticketmaster's website contains an Event Safety page which provides notice to consumers that "[e]ach venue determines their own guidelines according to local safety regulations," and directs customers to "check the venue site for more detailed info before going to an event." *See* Ticketmaster's Event Safety Webpage, available at www.ticketmaster.com/event-safety.[7] Ticketmaster's Event Safety page also notes some of the "safety precautions venues are taking, which [a customer] may encounter when attending an event" including

---

[4] *See* Ticketmaster Purchase Policy, available at <u>https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US</u>,last updated January 1, 2021, before Mr. Bush purchased tickets for The Wang Center Shows on July 11 and July 25, 2021.

[5] *See* Terms ("Our Privacy Policy, Purchase Policy, and any other policies, rules, or guidelines that may be applicable to particular offers or features on the Site are also incorporated into the Terms."); Ticketmaster Purchase Policy, available at <u>https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US</u>.

[6] *See* Ticketmaster Purchase Policy, available at <u>https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US</u> (emphasis added).

[7] This text is available on both Ticketmaster's current Event-Safety webpage, and on the version of the webpage in effect on March 31, 2021, prior to Mr. Bush's ticket purchases in July of 2021. The March 31, 2021 version of the Event-Safety Webpage may be accessed through archive.org at <u>https://web.archive.org/web/20210331155332/www.ticketmaster.com/event-safety</u>. It is appropriate to take judicial notice of materials from archive.org, especially when – as is the case here – the validity of such materials cannot reasonably be called into question. *See Walsh v. Teltech Sys., Inc.*, No. 13-13064-RWZ, 2015 WL 12856456, at *2 (D. Mass. July 30, 2015), aff'd, 821 F.3d 155 (1st Cir. 2016).

"Mask Required" meaning "[t]he venue is requiring fans to wear a mask during the event in public areas (specifics will vary)." *Id.*

## B.     Plaintiff's Allegations and Claims

Despite these provisions in the Terms and available via The Wang Center's website, Plaintiff has sued The Wang Center for its alleged conduct relating to the tickets purchased by Plaintiff for The Wang Center Shows.

In his Complaint, Plaintiff alleges that he was not informed via "Boch Center's promotional emails or the online purchase process" at the time of his purchase of the tickets that he would have to undergo certain measures to prevent the spread of COVID-19 in order to attend The Wang Center Shows. Compl. ¶ 7. After purchasing tickets to The Wang Center Shows, Mr. Bush alleges that he received three updates from The Wang Center regarding their COVID-19 measures. First, on August 23, 2021, Mr. Bush states that he received an email from The Wang Center providing an "Important Safety Update" (the "First Safety Update"). *Id.* at ¶ 12; *id.* at Exhibit 2. The Wang Safety Update stated that The Wang Center was "committed to helping stop the spread of COVID-19" and "w[ould] require all patrons to be fully vaccinated or provide a negative COVID test taken within 72 hours of the show" they intend to attend. *Id.* at Exhibit 2. The Wang First Safety Update further informed attendees that the new policy would go into effect on September 14, and that "[g]uests w[ould] be asked to show their vaccination card or test results and a government issued ID prior to entering an event at the Wang or Shubert Theatres." *Id*.

Second, on December 2, 2021, Mr. Bush alleges that he received an email containing an Important Safety Information update for the Cirque Dreams Show ("Second Safety Update"). Compl. ¶ 57; *id.* at Exhibit 12. The Cirque Dreams Safety Update informed patrons that before coming to The Wang Center or purchasing tickets they should "read the health, vaccine and entry policy below" and notified them that: (i) "[v]accinations or proof of negative Covid-19 test[s] [we]re required **FOR ALL PATRONS** at [The Wang Center] theatres regardless of age," and (ii) "[m]asks [we]re also required to be worn in [The Wang Center] theatres per City of Boston requirements." *Id.* at Exhibit 12 (emphasis in original). It stated that patrons

ages 12 and older were required to show proof of the following "at the theatre":

    (i)      Two doses of an FDA or WHO authorized two dose Covid-19 vaccine, received at least 14 days before the performance
    (ii)     A negative Covid-19 PCR test taken within 72 hours of the performance
    (iii)   A negative Covid-19 rapid antigen test within 72 hours of the performance.

*Id.* The Wang Center also informed attendees that it would provide "[o]n-site testing [] beginning 3 hours prior to curtain time on the day of [the] performance" for those who either forgot their vaccination card or were unable to receive a test ahead of time. *Id.*

        Third, on January 5, 2022, Mr. Bush alleges he received an email from The Wang Center announcing new COVID-19 Policy and Safety Measures ("Third Safety Update") which stated that starting January 15, 2022, "per the City of Boston's new vaccine requirement for indoor spaces," "[t]o enter [The Wang Center's] theatres" patrons ages 12 and up had to be fully vaccinated and were required to wear masks in the theatres. Compl. ¶ 69; *see also id.* at Exhibit 14. The January 5 notice further stated that "face coverings must cover the nose and mouth and comply with the CDC guidelines for acceptable face coverings." *Id.* at Exhibit 14 (emphasis omitted). Further, patrons must "[b]e ready to show proof of vaccination," meaning "[t]wo doses of an FDA or WHO authorized Covid-19 vaccine, received at least 14 days before the performance." *Id.*

        After learning of The Wang Center's COVID-19 policies, Mr. Bush informed The Wang Center that he intended to not comply with the policies and was subsequently issued a refund of his ticket purchase price by The Wang Center. Compl. ¶ 53. Mr. Bush claims that The Wang Center's refund "caused him to experience severe anxiety, sadness, humiliation, and despair." Compl. ¶ 56. He also claims that had he known of the COVID requirements, "he would not have purchased []tickets," *id.* at ¶¶ 7-8, and takes issue with the First Safety Update, Second Safety Update, and Third Safety Update (collectively, the "Wang Safety Updates"), contending that they are false and misleading and that they "unfairly discriminate[] against [him] for his naturally-acquired immunity" and disability. Compl. ¶¶ 13, 23. Specifically, Plaintiff claims to have "naturally-acquired immunity to SARS-CoV-2/COVID-19 [which] confers resistance to re-infection superior to and protection from COVID-19 disease lasting longer than that conferred by 'COVID-

19 vaccinations,'" Compl. ¶ 21, and claims to have a "disability" based on his "contraindications" for wearing a face mask. *Id.*; *see also id.* at Exhibit 3. Mr. Bush also alleges that The Wang Center's COVID-19 policy is "deceptive in that it implies wearing face masks that are not approved by the FDA for stopping the spread of COVID-19 will stop the spread of COVID-19," and that The Wang Center has "negligently failed to disclose to guests/customers the known harms of wearing face masks." Compl. ¶¶ 41, 45.

On the basis of his apparent belief that The Wang Center has "discriminated" against him and engaged in the other misconduct by issuing him a refund upon his refusal to comply with The Wang Center policies outlined in the Wang Safety Updates, Mr. Bush now brings suit to obtain a declaration that The Wang Center's COVID-19 policies are "unlawful and void," enjoin The Wang Center from alleged "religious and medical discrimination," and receive a damages award, which he alleges should be in excess of $800,000. *See* Compl. ¶¶ 80, 84, 87, 98, 103, 109.

## ARGUMENTS

## II.     COUNT I FAILS ADEQUATELY TO PLEAD A BREACH OF CONTRACT CLAIM

Plaintiff's breach of contract claim is precisely the type of bare bones pleading that warrants dismissal at the Fed. R. Civ. P. 12(b)(6) stage. Plaintiff's Complaint fails to specify the contract that forms the basis of his claim and does not identify a single provision that he alleges was breached. Additionally, Plaintiff's breach of contract claim is precluded in its entirety by the waiver and release provisions found in the Terms that govern his purchase of the tickets forming the basis of his claims. These fatal deficiencies warrant dismissal of Plaintiff's breach of contract claim.

### A.     Plaintiff's Breach of Contract Claim Fails Because Plaintiff Does Not Identify Any Provision of the Terms that was Breached

To adequately plead a claim for breach of contract, "a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016). This requires identifying a contractual provision that a defendant has breached. *See RI Prop. Wire, LLC v.*

*Linnell*, No. 18-12297-LTS, 2019 WL 4142502, at *4 (D. Mass. Aug. 30, 2019) ("RIPW would need to point to a specific contractual provision which promised that the foreclosure of the Property was not void to support a breach of contract claim against BANA."). Failing to do so warrants dismissal of a Plaintiff's breach of contract claim as inadequately plead. *Id.* (dismissing breach of contract claim where plaintiff failed to identify which contractual provision was allegedly breached).[8]

In the instant case, Plaintiff fails to meet this pleading requirement. Plaintiff asserts generally that an agreement with The Wang Center was formed when Mr. Bush purchased tickets for The Wang Center Shows. Compl. ¶¶ 74-77. Mr. Bush also alleges that by "communicat[ing] no conditions contingency" and then requiring patrons to comply with The Wang Center's COVID-19 policies, The Wang Center "breached a valid contract" with him. *Id.*[9] However, he fails to point to a single contractual provision in the Terms that either: (i) mandated he be allowed entry to The Wang Center Shows without being subject to The Wang Center's policies and protocols, or (ii) prohibited The Wang Center from reimbursing Plaintiff for his tickets upon his objection to The Wang Center policies. Nor could he, given that such provisions are entirely absent from the Terms.

In fact, the Ticketmaster website's Event Safety page explicitly informs customers that event venues (like The Wang Center) may require adherence to COVID-19 safety policies to attend an event.[10] And the Terms explain that the ticket is a <u>revocable</u> license, meaning The Wang Center was free to revoke Plaintiff's license to attend The Wang Center Shows and issue him a refund at any time (including for Plaintiff's objection to or threatened noncompliance with The Wang Center policies).

---

[8] *See also Richmond v. Wells Fargo Bank, N.A.*, No. 12-10011-RWZ, 2012 WL 3627644, at *1 (D. Mass. Aug. 22, 2012) (allowing motion to dismiss breach of contract claim where plaintiff failed to "identify any agreement with defendant that obligate[d] defendant to modify their mortgage loan, much less the terms of such agreement that were breached").

[9] Plaintiff appears to be claiming the Terms governing the purchase of his ticket to The Wang Center Shows were breached, although, the lack of specificity in the Complaint as to <u>which</u> contract is at issue is another basis for dismissal of his claim based on the Complaint's lack of specificity and conclusory allegations.

[10] *See* Ticketmaster's Event Safety Webpage, available at [www.ticketmaster.com/event-safety](www.ticketmaster.com/event-safety) (noting that "[e]ach venue determines their own guidelines according to local safety regulations," meaning that customers should "check the venue site for more detailed info before going to an event," and stating that some venues are requiring "fans to wear a mask during the event in public areas.").

This failure to identify any contractual term that was allegedly breached justifies dismissal of Plaintiff's breach of contract claim in its entirety – particularly given that the Terms' provisions and Ticketmaster's policies contradict the amorphous obligations Mr. Bush seeks to impose upon The Wang Center. *See Godines v. EF Explore Am., Inc.*, No. 2184CV1327, 2021 WL 7085170, at *5 (Mass. Super. Dec. 20, 2021) (dismissing plaintiff's breach of contract claim premised on the fact that "she did not receive the travel experience for which she paid" due to the COVID-19 pandemic because the underlying contract recognized that the plaintiff's trip could be cancelled).

**B.** **Plaintiff's Breach of Contract Claim (and Other Related Claims) Should Be Dismissed Because Plaintiff Released The Wang Center from All Liability Relating to Mr. Bush's Purchase of the Tickets**

Notwithstanding Plaintiff's failure to allege a breach, other provisions of the Terms bar Plaintiff's claims by releasing The Wang Center from liability stemming from the tickets he purchased for The Wang Center Shows. Ticketmaster's Terms preclude liability on the part of "Event Organizers" like The Wang Center for damages of any type "arising out of or in connection with" Ticketmaster or "any product or service purchased through the site." *See* Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US. By visiting Ticketmaster, customers also agree to waive their rights to seek damages "of any type" "arising out of or in connection with … any product or service purchased through the site" "regardless of whether the claim is based upon any contract, tort, or other legal or equitable theory." Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US; *see also id.* (stating that customers "[e]xpressly agree to the[] Terms" by "visiting or using [Ticketmaster's] Site.").

Thus, by purchasing tickets to The Wang Center Shows, and thereby agreeing to be bound by the Terms, Mr. Bush agreed that The Wang Center would not be "responsible or liable" to him for damages of any type in connection with his tickets or The Wang Center Shows, and agreed to waive his rights to seek damages "of any type" related to those tickets or The Wang Center Shows. *Id.* Because Plaintiff's claims clearly stem from the tickets he purchased through Ticketmaster to attend The Wang Center Shows, they

necessarily fail.[11] *See Nat'l Fed'n of the Blind v. Container Store, Inc*., No. 15-12984-NMG, 2016 U.S. Dist. LEXIS 98067, at *22 (D. Mass. Mar. 11, 2016) (electronic "'clickwrap' agreements" are "routinely enforced by state and federal courts"); *Smith v. Fallon Clinic, Inc*., No. 97-0577A, 1998 Mass. Super. LEXIS 105, at *15-16 (June 3, 1998) (since the contractual "release" was valid, plaintiff's "breach of contract claim" was necessarily "barr[ed]"); *Dolan v. Chase Home Fin., LLC*, No. 12-11662-GAO, 2015 U.S. Dist. LEXIS 105383, at *31-33 (D. Mass. July 10, 2015) (determining that the "release" at issue "undeniably encompasses" the breach of contract claim, and thus "forecloses" it). This is the case whether or not Plaintiff read or understood the contents of the release contained in the Terms and Purchase Policy.[12]

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR G.L. C. 272 §§ 92A AND 98 VIOLATIONS

Plaintiff's claimed violations of the public accommodation statutes (G.L. c. 272 §§ 92A and 98) should be dismissed because he has brought this suit prematurely and has not alleged that he has a cognizable disability.

First, Plaintiff's G.L. c. 272 §§ 92A, 98 claim is premature because he has not exhausted his administrative remedies prior to filing. "[T]he [Massachusetts Commission Against Discrimination] has been given broad jurisdiction to administer and effectuate the provisions of anti-discrimination statutes of the Commonwealth, including G.L. c. 272, §§ 92A and 98." *E. Chop Tennis Club v. Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 446 (1973). In particular, certain administrative processes are available to persons "claiming to be aggrieved by an alleged unlawful practice or alleged violation of … sections ninety-two A, [or] ninety-eight." G.L. c. 151B, § 5. "[A] plaintiff must pursue the opportunities available for administrative relief before seeking relief from the court." *E. Chop Tennis Club*, 364 Mass. at

---

[11] Because all of the claims brought by Plaintiff in this action relate to his ticket purchases, Plaintiff's other tort and statutory claims should also be precluded by operation of the release and waiver in the Terms.

[12] *See Doe v. Cultural Care, Inc*., 2011 WL 1048624, at *5 (D. Mass. Mar. 17, 2011) ("It is a rule in this Commonwealth that the failure to read or to understand the contents of a release, in the absence of fraud or duress, does not avoid its effects.") (quotes and citation omitted); *Sharon v. City of Newton*, 437 Mass. 99, 105 (2002) (holding that by signing a release, plaintiff and her father were deemed to have "understood it" despite plaintiff's claim that she did not realize that by signing the release she was waiving future claims against the defendant).

453 (1973).[13]

Here, because Plaintiff has not fully exhausted his administrative remedies with the commission prior to filing suit, his claim is necessarily premature and should be dismissed. *See E. Chop Tennis Club*, 364 Mass. at 453 (1973) (holding that it was "unnecessary to consider the merits of the [plaintiff's complaint]" where "[t]he club acted prematurely in bringing [its] suit for declaratory relief before exhausting its administrative remedies."); *McKenney v. Comm'n on Jud. Conduct*, 380 Mass. 263, 266–67 (1980) ("In sum, the requirement that a party exhaust his administrative remedies prior to seeking judicial relief reflects 'a sound principle of law and jurisprudence aimed at preserving the integrity of both administrative and judicial processes.'").

Second, Plaintiff's claim also fails because he has no cognizable disability under the public accommodation statutes. "The public accommodation statutes, G.L. c. 272, §§ 92A and 98, prohibit discrimination on the basis of [disability], among other factors, in relation to the admission of or treatment of any person in a place of public accommodation." *Donaldson v. Farrakhan*, 436 Mass. 94, 97 (2002). In interpreting what qualifies as a "disability," Massachusetts courts look to the Americans with Disabilities Act (the "ADA"). *See Nathanson v. MCAD*, No. 199901657, 2003 WL 22480688, at *4 (Mass. Super. Sept. 16, 2003) (noting that the ADA is a statute with "objectives similar" to the public accommodation statutes and stating that "[i]t is thus appropriate to look to the ADA, and decisions interpreting it, for guidance when interpreting the provisions of the Massachusetts Public Accommodation statute."). A disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more major life

---

[13] Some courts have taken the contrary position that it is unnecessary for plaintiffs to fully exhaust their administrative remedies prior to bringing claims alleging public accommodations violations. *See Peters v. Bos. Properties, Inc.*, No. 2084CV02447, 2021 WL 3493907, at *3 (Mass. Super. June 15, 2021) (collecting cases). However, in *Peters*, as in other cases in which the court opined that prior exhaustion of administrative remedies was not a bar to a plaintiff's claims, the plaintiff did in fact proceed with some administrative process prior to bringing a civil suit. In *Peters*, for example, although the plaintiff failed to file a prior MCAD charge of discrimination against some of the defendants, plaintiff had filed a verified charge as to other defendants which resulted in MCAD issuing a finding of probable cause against them. *Id*. Thus – unlike here – MCAD had already served its gating function and deemed plaintiff's civil rights claim legitimate, at least in part.

activities."[14] 42 U.S.C. § 12102(1)(A); *see also Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeking, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

Here, Plaintiff's G.L. c. 272, §§ 92A and 98 claim is premised on his "belie[f] [that] he would be barred from attending the shows for which he had purchased tickets on the basis of his disability," Compl. ¶ 13, and The Wang Center's alleged discrimination against him based on "his naturally-acquired immunity" to COVID-19. *Id.* ¶ 23.[15] Plaintiff's "naturally-acquired immunity" to COVID-19 is not a physical or mental "impairment" and therefore cannot form the basis of his statutory public accommodation claim. Similarly, Plaintiff's "contraindications to mask wearing for a private medical condition," noted in his physician's letter, *see* Compl. at Exhibit 3, also do not qualify as a disability because Plaintiff has not identified any major life activity that has been limited by his alleged "contraindications," and has not provided any details as to the severity of his impairment or how his alleged contraindications have substantially limited his major life activities.[16] Plaintiff's claim fails on this basis. *See Lane v. Potter*, 699 F. Supp. 2d 358, 363 (D. Mass. 2010) (granting motion to dismiss where plaintiff failed to adequately allege he had a disability because "plaintiff's sole limitations [we]re climbing ladders and driving long distances"

[14] Although a "disability" may also encompass being regarded as having an impairment that substantially limits one of more of the major life activities, Plaintiff has not alleged that The Wang Center ever regarded him as having a disability, rendering this definition inapplicable. *See* 42 U.S.C. § 12102(2).

[15] To the extent plaintiff alleges a public accommodation claim based on religious discrimination, he fails to state a claim since he does not explain what religious beliefs he held or how his religious beliefs in any way precluded him from wearing a face mask, getting a COVID-19 test, or getting a vaccinated. *See Semmami*, 2019 WL 2249705 at *1 (D. Mass. 2019) ("[C]onclusory legal conclusions are not credited" in evaluation of a motion to dismiss).

[16] *See* Compl. ¶ 13 (relying on Plaintiff's physician's letter to substantiate his alleged disability); *Leonard v. Am. Med. Response*, No. CIV.A. 09-10031-RGS, 2009 WL 1883725, at *3 (D. Mass. July 1, 2009) (granting motion to dismiss and holding that plaintiff's "glancing reference to an unknown 'disorder' [wa]s insufficient to raise a claim of 'disability' under the ADA" where plaintiff made "no factual allegations that his disorder constitute[d] 'an impairment'" and stated only that he had "an unspecified 'emotional disorder'"); *Together Emps. v. Mass Gen. Brigham Inc.*, No. CV 21-11686-FDS, 2021 WL 5234394, at *7 (D. Mass. Nov. 10, 2021) (holding that plaintiffs failed to demonstrate a likelihood of establishing that they were disabled and should be exempted from employer's COVID-19 vaccination requirement where "[w]ithout much elaboration, plaintiffs contend[ed] that the major life activity affected [wa]s 'working' and that 'the taking of vaccines would significantly limit their major life activities.'"); *Lebron-Torres v. Whitehall Lab'ys*, 251 F.3d 236, 241 (1st Cir. 2001) (concluding that "failure to proffer any evidence specifying the kinds of jobs that [plaintiff's] ... condition prevented her from performing dooms her ADA claim")

and "Plaintiff's level of restriction in this area d[id] not qualify as 'severe'").

## IV. PLAINTIFF'S BREACH OF IMPLIED COVENANT CLAIM FAILS

Plaintiff's breach of implied covenant of good faith and fair dealing (the "implied covenant") claim fails for a few key reasons. First, Plaintiff's bare bones allegations are inadequate in that they merely recite the elements of an implied covenant claim without providing any explanation as to how Plaintiff believes the implied covenant was breached, or what bad faith conduct was allegedly taken by The Wang Center.[17]

Second, even if an implied covenant claim could be inferred through the factual background provided in the Complaint, Plaintiff still fails to state a claim because: (i) the Terms were not breached, (ii) it was not reasonable for Plaintiff to have expected that no COVID-19 safety policies would be imposed, and (iii) Plaintiff has not alleged any dishonesty or bad faith on the part of The Wang Center.

### A. The Terms Bar Plaintiff's Claim

In Massachusetts, although "every contract is subject to an implied covenant of good faith and fair dealing," *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473 (1991), "[t]he scope of the covenant is only as broad as the contract that governs the particular relationship." *Ayash v. Dana–Farber Cancer Inst.*, 443 Mass. 367 (2005). Thus, where there has been no breach of any contractual duty, there is no breach of the implied covenant. *See Godines v. EF Explore Am., Inc.*, No. 2184CV1327, 2021 WL 7085170, at *6 (Mass. Super. Dec. 20, 2021) (dismissing implied covenant claim where "there was no breach of the contract" because the implied covenant "may not be 'invoked to create rights and duties not otherwise provided for in the existing contractual relationship.") (citations omitted).

For the reasons discussed in Section I, *supra*, the Terms have not been breached; there is nothing in the Terms prohibiting The Wang Center from imposing COVID-19 safety measures or curtailing The Wang Center's right to issue Mr. Bush a refund upon his stated intent not to comply with those measures. Thus,

---

[17] *See* Compl. ¶ ¶ 86-87 (stating only that "[b]y its conduct, Boch Center breached the covenant of good faith and fair dealing" and "[a]s a direct and proximate result of Boch Center's failure to exercise good faith and fair dealing, Mr. Bush has been damaged."); *Saxena v. Univ. of Massachusetts Med. Sch.*, 442 F. Supp. 3d 395, 404 (D. Mass. 2020) (dismissing complaint where plaintiff's allegations in support of his claims were "based on legal conclusions").

Plaintiff's implied covenant claim seeks to create rights or duties beyond those that the parties agreed to when they entered into the Terms and necessarily fails. *See Speleos v. BAC Home Loans Servicing, L.P.,* 755 F.Supp.2d 304, 312 (D. Mass. 2010) (dismissing implied covenant claim where plaintiffs had not alleged the breach of any specific contractual provision); *Uno Rest., Inc. v. Bos. Kenmore Realty Corp*., 441 Mass. 376, 388 (2004) (declining to "impose an additional duty" on Defendants beyond that which was required by the parties' contract through the implied covenant).

### B.  It Was Not Reasonable to Expect The Wang Center Not to Adopt COVID-19 Safety Measures

When Mr. Bush purchased his tickets to The Wang Center Shows, COVID-19 remained rampant. In fact, the impetus for The Wang Center's COVID-19 protocols came from the City of Boston's guidelines and its stated vaccine requirement for indoor spaces. *See* Wang Center Safety Updates. Plaintiff does not contend that he was not aware of the COVID-19 pandemic at the time he purchased his tickets to The Wang Center Shows, or dispute that federal and local government guidelines recommended imposition of safety measures to prevent the spread of COVID-19. Yet, incredulously, he contends that he was "shocked and dismayed" when he found that The Wang Center was adopting such measures, apparently expecting The Wang Center not to adopt COVID-19 measures in line with federal and local guidelines. Compl. ¶ 57. Further, as discussed, Mr. Bush was on notice that The Wang Center might impose safety measures related to the COVID-19 pandemic, including mask mandates.[18] *Id.* Thus, Plaintiff's expectation regarding The Wang Center's lack of COVID-19 policies was patently ***un***reasonable, warranting dismissal of his implied covenant claim. *See Ocasio-Hernandez*, 640 F.3d at 12 (1st Cir. 2011) (stating that in ruling on a motion to dismiss, a court "draw[s] on its judicial experience and common sense" in evaluating claim plausibility).

### C.  Lack of Good Faith

---

[18] The Event Safety page on Ticketmaster's website, where Plaintiff purchased his tickets, informed him that "[e]ach venue determines their own guidelines according to local safety regulations," and directed him to "check the venue site for more detailed info before going to an event." *See* Ticketmaster's Event Safety Webpage, available at www.ticketmaster.com/event-safety. The Event Safety page also noted a number of "safety precautions venues are taking, which [a customer] may encounter when attending an event" including "mask required" meaning "[t]he venue is requiring fans to wear a mask during the event in public areas (specifics will vary)."

Plaintiff's implied covenant claim should also be dismissed based on Plaintiff's failure to plead any lack of good faith on the part of The Wang Center.[19] Aside from his conclusory allegation that The Wang Center has "fail[ed] to exercise good faith and fair dealing," Mr. Bush has not plead <u>any</u> plausible dishonest purpose, conscious wrongdoing, or self-interest or ill will motivating The Wang Center's decision to implement COVID-19 safety precautions. The Wang Center's stated motivation in implementing the COVID-19 measures was to "help[] stop the spread of COVID-19," and ensure compliance with the City of Boston's vaccine requirements for indoor spaces, and Plaintiff has not alleged any facts that contradict this motivation. *See* Wang Safety Updates. Further, the idea that The Wang Center acted with a dishonest purpose or ill will by imposing COVID-19 policies is belied by commonsense – if anything, imposing these policies could detriment The Wang Center by causing patrons not to attend shows for which they otherwise would have purchased a ticket. This lack of apparent bad faith on the part of The Wang Center undercuts the plausibility of Plaintiff's conclusory bad faith allegations and warrants dismissal of his claim.[20]

# V.    PLAINTIFF'S CLAIM FOR VIOLATION OF 42 USC § 1983 AND 18 U.S.C. § 242 SHOULD BE DIMSISSED

## A.    Plaintiff Fails to Allege a Valid Claim Under 42 U.S.C. § 1983

42 U.S.C. § 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State.'" *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). "Therefore, a plaintiff claiming a § 1983 violation must allege that a person or persons acting under color of state law deprived him of a federal constitutional or statutory right." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005) (citing *Rockwell v. Cape Cod Hosp*., 26 F.3d 254, 256

---

[19] *See Young v. Wells Fargo Bank, N.A*., 717 F.3d 224, 238 (1st Cir. 2013) (stating that a plaintiff must "present evidence of bad faith or an absence of good faith" to adequately plead an implied covenant claim which "carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.").

[20] *See Stamos v. Verdasys, Inc.*, No. CIV.A. 12-622-BLS1, 2013 WL 4008178, at *8 (Mass. Super. May 22, 2013) (dismissing plaintiff's implied covenant claim where plaintiff "could not plausibly claim that the motive behind [the defendant's actions was a] desire to cheat him out of the stock he was entitled to"); *Tactician Corp. v. Subway Int'l, Inc*., No. CV 21-10973-JGD, 2021 WL 5640695, at *4 (D. Mass. Dec. 1, 2021) (dismissing implied covenant claim and explaining that the court must distinguish the complaint's factual allegations "from its conclusory legal allegations (which need not be credited).") (citation omitted).

(1st Cir. 1994)). "If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal." *Id.*

In this case, Mr. Bush's 42 U.S.C. § 1983 claim fails for at least two reasons. First, The Wang Center is not a "state actor" and therefore, is not subject to 42 U.S.C. § 1983. Second, Plaintiff has not adequately alleged that The Wang Center's conduct violated his constitutional or federal statutory rights.

### 1. The Wang Center is Not a Government Entity Subject to the Statute

"The First Circuit looks to three tests to determine if 'a private party fairly can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test.'" *Manning v. Whole Foods Mkt. Grp., Inc.*, No. 21-cv-10833-ADB, 2022 WL 194999, at *4 (D. Mass. Jan. 21, 2022). "It is '[o]nly in rare circumstances' that private parties can be viewed as state actors." *Estades-Negroni*, 412 F.3d at 4 (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)).

Here, Plaintiff has failed to allege facts sufficient to show that The Wang Center could be considered a state actor under any of the First Circuit's tests. For the state compulsion test, "a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" *Estades-Negroni*, 412 F.3d at 5 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Although Plaintiff alleges that The Wang Center's COVID-19 safety policies were prompted, in part, by Boston Public Health Commission's Order Requiring Face Coverings in the City of Boston and Boston Mayor Wu's proof of COVID-19 vaccination procedure, this is insufficient to render The Wang Center a "state actor" because Plaintiff "is not challenging the Massachusetts mask [or vaccination] mandate[s] [themselves] and he has not alleged any facts to show that Massachusetts coerced [The Wang Center] into implementing or enforcing their own Mask [or vaccination] Policy." *Manning*, 2022 WL 194999, at *4-5 (dismissing Section 1983 claim brought against Whole Foods based on Whole Foods' policy requiring customers to wear a mask while shopping in its stores, and finding Whole Foods was not a "state actor").

Similarly, because Plaintiff fails to allege that the government was a "joint actor in [The Wang Center's] decision to implement and enforce the Mask [and vaccine] Polic[ies]," The Wang Center does not qualify as a state actor under the nexus/joint action test. *Id*. at \*4; *see also Estades-Negroni*, 412 F.3d at 5 ("[t]he nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'") (quoting *Bass v. Parkwood Hosp*., 180 F.3d 234, 242 (5th Cir. 1999)).

The Wang Center also cannot be deemed a state actor under the public function test. "[A] private party is viewed as a state actor [under the public function test] if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" *Estades-Negroni*, 412 F.3d at 5. "The public function test 'is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities.'" *Cruz-Arce v. Mgmt. Admin. Servs. Corp*., 19 F.4th 538, 544 (1st Cir. 2021) (quoting *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18-19 (1st Cir. 1999)). A private party's mere enforcement and implementation of its own "internal policies" to protect the health and safety of patrons and staff members does not suffice to establish that the private party was "performing a public function." *See Manning*, 2022 WL 194999, at \*5 (holding that was not a state actor where it "implemented and, through its employees, enforced a store policy to protect the health and safety of its customers and staff."). Because Plaintiff has not alleged any public function performed by The Wang Center beyond what would be considered enforcement of The Wang Center's own internal policies, The Wang Center cannot be deemed a "state actor."

For these reasons, Plaintiff's Section 1983 claim necessarily fails.

## 2. The Wang Center Did Not Violate Plaintiff's Constitutional or Federal Statutory Rights

Even if Plaintiff's claim were not barred based on the lack of state action, his Section 1983 claim would still fail because Plaintiff has not adequately alleged that The Wang Center's conduct "violated his constitutional or federal statutory rights." *Miller v. Town of Wenham Massachusetts*, 833 F.3d 46, 51 (1st

Cir. 2016) (citing *Chongris v. Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir. 1987)). The two statutory bases for Plaintiff's claim are purported violations of G.L. c. 272 § 92A and the ADA. As discussed in Section II, *supra*, because Plaintiff does not adequately allege that he has any disability cognizable under either statute, he fails to identify any constitutional or statutory rights that were violated, warranting dismissal of his claim.

**B.      There is No Private Cause of Action Under 18 U.S.C. § 242**

18 U.S.C. § 242 is "the criminal analogue of 42 U.S.C. § 1983." *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989). It imposes liability on "[w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subject any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . ." *See* 18 U.S.C. § 242. 18 U.S.C. § 242 "does not provide a private right of action and cannot be used in a civil action." *Bey v. Att'y Gen. of Massachusetts*, No. 21-11508-ADB, 2021 WL 4926164, at *3 (D. Mass. Oct. 21, 2021) (emphasis added). Instead, claims under 18 U.S.C. § 242 may only be brought by "the United States as prosecutor." *Cok*, 876 F.2d at 2. For this reason, Courts in this circuit have dismissed similar claims premised on 18 U.S.C. § 242 brought by individuals alleging that a private company's COVID-19 safety policies violated their civil rights. *Manning*, 2022 WL 194999, at *5 (dismissing Plaintiff's Section 242 claim brought by an individual against Whole Foods arising from Whole Foods' policy requiring customers to wear masks in order to enter the store). Because 18 U.S.C. § 242 does not provide a private right of action that can be brought by Plaintiff, and may not be brought in a civil action, Plaintiff's claim fails as a matter of law.

**VI.   PLAINTIFF'S MISREPRESENTATION CLAIM IS INADEQUATELY PLEAD**

Plaintiff's misrepresentation claim alleges that The Wang Center made "intentional misrepresentations" that were false "to induce him to enter into a consumer transaction with [The Wang] Center." Compl. ¶¶ 100-103. To state a claim based on fraudulent misrepresentation, a plaintiff must show "that the defendants made a false statement" or "suppli[ed] false information." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,* 455 Mass. 458, 471 (Mass. 2009); *see also Int'l Floor Crafts, Inc. v. Adams*, 477 F.Supp.2d 336, 341 (D. Mass. 2007). Where a plaintiff fails to allege "a particular false statement," his

misrepresentation claim is appropriately dismissed.[21] Further, because "misrepresentation is considered a species of fraud," the civil rules "explicitly require" that "the circumstances [plaintiff alleges] constitute[e] fraud . . . shall be stated with particularity." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc*., 374 F.3d 23, 29 (1st Cir. 2004); *see also* Fed. R. Civ. P. 9(b).

Plaintiff's misrepresentation claim fails to point to any specific statement that forms the basis of his claim. *See* Compl. ¶¶ 99-103. Instead, it appears that the misrepresentation forming the basis of Plaintiff's claim is The Wang Center's alleged failure to disclose the COVID-19 policies it would adopt in the future.[22] Regardless of whether labeled a misrepresentation or an omission, Plaintiff's claim fails because the subject matter was of a "fundamentally predictive nature" and not false at the time of the supposed fraud. *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1199, 1202 (D. Mass. 1990) (stating that a defendant may not be held liable if the representation "concerned a matter of opinion, estimate or judgment, which was not susceptible of actual knowledge at the time of its utterance.").[23] Plaintiff does not allege, for example, that The Wang Center knew at the time Plaintiff purchased tickets that it would later require adherence to these COVID-19 policies. Thus, to the extent any statement was omitted or made by The Wang Center related to its future COVID-19 policies, it was of a fundamentally predictive nature that cannot form the basis of a fraud claim, warranting dismissal.[24]

---

[21] *Kruskall v. Sallie Mae Serv., Inc*., No. 15-cv-11780, 2016 WL 1056973, at *6 (D. Mass. Mar. 14, 2016) (dismissing Plaintiff's claim where plaintiff's "allegations regarding misrepresentations [we]re exceedingly sparse" and "[e]ven putting aside the requirements of Rule 9(b) as to any claim of negligent misrepresentation, [plaintiff] still d[id] not adequately allege a particular false statement of material fact as to []his claim."); *see also Rogers v. Nstar Elec*., 389 F. Supp. 2d 100, 110 (D. Mass. 2005) (allowing motion to dismiss where plaintiff did not allege a specific material misrepresentation).

[22] *See* Compl. ¶ 7 ("[n]owhere in the Boch Center's promotional emails or the online purchase process was it disclosed to Bush that he would have to undergo 'vaccination(s)', medical test(s) and/or wear a mask in order to attend the shows").

[23] *See also Buckley v. Goldman, Sachs & Co.*, No. CIV.A.02-CV-11497RGS, 2005 WL 1206865, at *9 (D. Mass. May 20, 2005) (dismissing fraud claim based on "misrepresentation by omission" as to "predictive statements" about the market environment); *Hallmark Inst. of Photography, Inc.*, 518 F. Supp. 2d at 332 (D. Mass. 2007) (dismissing misrepresentation claim since "Defendant simply could not have known when it made its prediction … what the results … would actually be" and there was no allegation that defendant "knew, or even could have known, that its prediction was untrue when it made the statement"); *4 MVR, LLC*, 2013 WL 310290, at *5 (dismissing misrepresentation claim where plaintiff did not plausibly allege that the statements were false when they were made in 2010).

[24] Plaintiff's reliance on any such omission or representation is also contradicted by Ticketmaster's website which expressly informs customers that each venue may impose their own COVID-19 policies, including face mask mandates. Therefore, his reliance on any "misrepresentation" or omission communicated by The Wang Center was not reasonable. *See Saint Consulting Grp., Inc. v. E. Ins. Grp., LLC*, No. MICV201202218H, 2015 WL 2062202, at *9 (Mass. Super. Feb. 25, 2015), judgment entered

19

## VII.  PLAINTIFF'S 93A CLAIM IS INADEQUATELY PLEAD

Chapter 93A does not apply to The Wang Center because it is a charitable institution and the COVID-19 policies forming the basis of Plaintiff's claim were "made in the context of furthering [The Wang Center's] core mission" of providing performing arts entertainment.[25] *Moran v. Stonehill Coll., Inc*., No. 2077CV00431, 2021 WL 965754, at *7 (Mass. Super. Feb. 16, 2021) (dismissing 93A claim brought against nonprofit school that refused to refund tuition and fees since the "decision to reimburse certain charges but not others was part of Stonehill's larger process of deciding how best to continue educating its students when a pandemic forced it to shutter its campus and made in-person instruction impossible.").[26]

Even if Plaintiff could assert a 93A claim against The Wang Center, his claim would still fail. Seeking to protect patrons from COVID-19 does not amount to "extreme or egregious business wrong or commercial extortion," and does not "rise to some similar level of "rascality" that raises "an eyebrow of someone inured to the rough and tumble of the world of commerce." *Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co*., 802 F.3d 39, 54 (1st Cir. 2015) (citation omitted). Thus, The Wang Center's alleged actions were not unfair or deceptive.[27]

### **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's claims with prejudice and grant such other and further relief as the Court may deem just and proper.

---

sub nom. The Saint Consulting Grp., Inc. v. E. Ins. Grp. LLC (Mass. Super. 2015) (Plaintiff's reliance was not reasonable as a matter of law where the representations were "specifically contradicted by the terms of the written contract.").

[25] *See* The Wang Center's website, available at https://www.bochcenter.org/ (The Wang Center's core mission is providing performing arts entertainment and cultural education experiences to diverse audiences).

[26] *See also Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc*., 398 Mass. 480, 492-93 (1986) (holding that plaintiff's 93A claim against Planned Parenthood was foreclosed because "the Legislature intended to exclude the activities engaged in by a [charitable] corporation such as PP, Inc. from the reaches of c. 93A."); *Squeri v. Mount Ida Coll*., 954 F.3d 56, 72 (1st Cir. 2020) (93A claim did not apply to college that was a nonprofit; *Linkage Corp. v. Trustees of Boston Univ*., 425 Mass. 1, 23, 26 (1997) (It is well established law that while "[a]n entity's 'status as a charitable corporation is not ... dispositive of the issue whether ch. 93A applies[,]' [i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission.").

[27] Plaintiff's 93A claim should also be dismissed because it is based on the same conduct forming the basis of his misrepresentation and breach of contract claims – both of which fail. *See Hallmark Inst. of Photography, Inc.*, 518 F. Supp. 2d at 332 ("Hallmark's claim under Chapter 93A must be dismissed since it has failed to establish any breach of contract, misrepresentation, or other actionable conduct by CollegeBound.").

Dated:  April 5, 2022

Respectfully submitted,

The Wang Center for the Performing Arts, Inc.
d/b/a Boch Center

By its attorneys,

/s/ *Bruce E. Falby*
Bruce E. Falby (BBO No. 544143)
Kelsey Tavares (BBO No. 705934)
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (facsimile)
bruce.falby@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Counsel for Defendant*

## REQUEST FOR ORAL ARGUMENT

Given the dispositive nature of the motion and the issue of law presented throughout the Memorandum, The Wang Center hereby respectfully requests oral argument on the present motion pursuant to Local Rule 7.1(d) of the U.S. District Court for the District of Massachusetts.

## LOCAL RULE 7.1 STATEMENT

Pursuant to Rule 7.1(a)(2) of the Local Rules of the United States District Court for the District of Massachusetts, counsel for Defendant certifies that they contacted counsel for Plaintiff in an attempt to confer on the issues addressed by this Motion on April 5, 2022. During that call, the parties engaged in a good-faith effort to resolve or narrow the issues raised by this motion; however, they were unable to do so.

/s/ *Bruce E. Falby*
Bruce E. Falby

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 5th day of

April, 2022 via the Court's ECF system to:

Richard C. Chambers, Jr., Esq.
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940

*Counsel for Plaintiff*

/s/ *Bruce E. Falby*
Bruce E. Falby