UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BUSH ) | |
| ) | |
|    Plaintiff ) | |
| ) | CIVIL ACTION NO:_ |
| v. ) | 1:22-cv-10473-GAO |
| ) | |
| THE WANG CENTER FOR THE PERFORMING ) | |
| ARTS, INC. ) | |
| d.b.a. Boch Center ) | |
| ) | Jury Trial Demanded |
|    Defendant ) | |

**FIRST AMENDED COMPLAINT**
(For Declaratory and Injunctive Relief and Damages)

INTRODUCTION

The Plaintiff, Michael Bush, had attended shows at the Defendant's theaters in Boston a

number of times over the years. After the Defendant closed its theaters in response to the

government's orders regarding COVID-19, Mr. Bush was relieved when the Defendant reopened

its theaters and announced shows would resume in the second half of 2021. He was further

relieved to see that as the Defendant offered tickets to attend upcoming shows in its theaters, the

Defendant imposed no medical requirements on him that he could not meet. He bought tickets to

upcoming shows, eagerly anticipating much-needed recreation with his wife. Weeks later, the

Defendant announced extensive medical requirements Mr. Bush could not meet. Though the

Defendant cited government-issued orders as reason for its oppressive new policies, the

Defendant's policies went further than the government-issued orders and violated civil rights

laws. Through his undersigned counsel, Mr. Bush informed the Defendant in writing that its new

policies were unlawfully discriminatory, he could not meet their unlawful requirements, and the

Defendant must correct its violations of civil rights laws. The Defendant responded in writing, disregarded its civil rights violations, and merely offered to refund Mr. Bush's ticket purchase prices. Through counsel, Mr. Bush responded in writing and made clear a mere refund would not rectify the wrongs and offered to help the Defendant create policies that conform to applicable laws. The Defendant ignored Mr. Bush's letter and instead unilaterally took Mr. Bush's tickets away and refunded his purchase price, thereby violating his civil rights and inflicting emotional distress.

## JURISDICTIONAL AUTHORITY OF THE COURT

1) This action is brought pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 12101 et seq, and 42 U.S.C. §§ 1983. This Court has jurisdiction specifically delegated to it by act of the United States. This action seeks to redress the deprivation under State and federal law of rights, privileges, and immunities secured by the United States Constitution and the United Nations, and laws of the United States.

## PARTIES TO THIS ACTION

2) Plaintiff, Michael Bush, is an individual residing at 280 Lowell Street in Carlisle, Middlesex County, in the Commonwealth of Massachusetts.

3) Defendant, The Wang Center For The Performing Arts, Inc., is a nonprofit corporation organized under the laws of the Commonwealth of Massachusetts, with a principal office located at 270 Tremont Street, Boston, Suffolk County, Massachusetts.

## FACTUAL BACKGROUND TO THIS CLAIM

4)      Using the hyperlinks in the Boch Center's promotional email messages to Bush, on July 25th, 2021 Bush purchased tickets online to the Cirque Dreams Holidaze show to be held at the Boch Center Shubert Theatre on December 11, 2021.

5)      On July 11th, 2021 Bush purchased tickets online to the Il Divo "For Once In My Life" Tour show to be held at the Boch Center Wang Theatre on September 3rd, 2021.

6)      Nowhere in the Boch Center's promotional emails or the online purchase process was it disclosed to Bush that he would have to undergo "vaccination(s)", medical test(s) and/or wear a mask in order to attend the shows.

7)      Had Boch Center disclosed such medical requirements to Bush prior to and/or during the purchase process, he would not have purchased the tickets.

8)      Bush purchased the tickets with the intention to attend both shows with his wife. He looked forward to what he anticipated would be relaxing and fun experiences with his wife at those shows.

9)      Subsequent to his ticket purchases, Bush received an email message informing him that the Il Divo show had been rescheduled to February 22nd, 2022.

10)      On August 23rd, 2021 the United States Food and Drug Administration ("FDA") granted and announced formal approval/licensure to Pfizer's COMIRNATY COVID-19 mRNA "vaccine". (See Exhibit 1 enclosed.)

11)      After the FDA's licensure of COMIRNATY, on August 23rd, 2021 Bush received an email message from Boch Center (enclosed as Exhibit 2 and hereinafter referred to as the "policy") informing him that commencing September 14th, 2021 he and other guests at Boch Center's theatres' shows would have to wear mask(s) as well as show evidence of

"COVID-19 vaccination" or show a negative COVID test result to attend show(s) for which Bush had previously purchased tickets.

12) Bush was shocked and dismayed by Boch Center's policy, which caused him to experience anxiety, sadness, and despair because he has a medical condition that prevents him from wearing a face mask and the policy led him to believe he would be barred from attending the shows for which he had purchased tickets on the basis of his disability. (See Bush's physician's letter enclosed as Exhibit 3.)

13) Boch Center wrongly used Boston Public Health Commission's Order Requiring Face Coverings In The City Of Boston dated August 20, 2021 as justification for its face mask policy. (See Exhibit 4 enclosed).

14) The Massachusetts statutes the Boston Public Health Commission cited as authority for its issuance of its Face Coverings order do not authorize it or any other board of health to order usage of face coverings or any other medical devices.

15) That Boston Public Health Commission Order stated that, "face coverings are not required for children under two years of age, anyone who has trouble breathing, anyone who is unconscious, incapacitated or otherwise unable to remove the mask without assistance, or anyone who due to disability is unable to wear a mask."

16) Boch Center's policy allowed for none of the exemptions the Boston Public Health Commission Order specified.

17) According to Boch Center's own policy, a show guest/invitee would be allowed entry even if they were coughing and feverish and tested positive for COVID-19/SARS-CoV-2 upon arrival as long as the guest showed proof of "COVID-19 vaccination" and wore a mask.

18) According to Boch Center's own policy, a show guest/invitee would be allowed entry even if they tested positive for Ebola virus and displayed multiple symptoms of Ebola infection as long as the guest showed proof of "COVID-19 vaccination" and wore a mask.

19) According to Boch Center's own policy, a show guest would be allowed entry even if they tested positive for measles, showed measles rash, and displayed multiple symptoms of measles infection as long as the guest showed proof of "COVID-19 vaccination" and wore a mask.

20) Boch Center's policy makes no accommodation for naturally-acquired immunity to SARS-CoV-2/COVID-19 such as test results showing antibodies or T cells in lieu of COVID virus testing and/or proof of vaccination.

21) Studies have shown that naturally-acquired immunity to SARS-CoV-2/COVID-19 confers resistance to re-infection superior to and protection from COVID-19 disease lasting longer than that conferred by "COVID-19 vaccinations". See https://brownstone.org/articles/how-likely-is-reinfection-following-covid-recovery/ (last visited April 18, 2022).

22) Bush has naturally-acquired, documented immunity to SARS-CoV-2/COVID-19.

23) Boch Center's policy unfairly discriminates against Bush for his naturally-acquired immunity by requiring him to show and/or pay for a negative COVID test that the Boch Center does not require of show guests/invitees who show evidence of COVID-19 "vaccination".

24) Pfizer's COMIRNATY and Moderna's Spikevax are the only "COVID-19 vaccine" products to have received formal approval/licensure by the FDA so far.

25) On and since August 23rd, 2021, there has been no COMIRNATY or Spikevax product available in the U.S.A. (See https://lc.org/newsroom/details/013122-no-fdaapproved-covid19-shot-is-available last visited April 18, 2022 and page 19 of Exhibit 5 enclosed.)

26) The only "COVID-19 vaccines" available in the U.S.A. have been granted emergency use authorization ("EUA") by the FDA.

27) Medical products granted EUAs by the FDA are only authorized for investigational/experimental usage.

28) By law, EUAs for other medical products must be withdrawn by the FDA if a medical product formally approved for that same purpose is available for use.

29) Boch Center's policy effectively requires customers to be "fully vaccinated" with a product authorized only for investigational/experimental usage and without formal approval/licensure by the FDA or to subject themselves to a COVID test authorized only for investigational/experimental use.

30) Boch Center's policy failed to disclose that the only "COVID-19 vaccines" available in the U.S.A. are not approved or licensed by the FDA.

31) Boch Center's policy requires all guests/customers to wear masks to purportedly "stop the spread" of COVID-19 without legal authority.

32) The FDA is the sole agency that regulates medical devices and products in the U.S.A.

33) The U.S. Centers for Disease Control and Prevention does not regulate medical devices or products.

34) The FDA has not approved any masks to stop the spread of COVID-19 or other viral respiratory infections.

35) The FDA has not granted an EUA to any masks to stop the spread of COVID-19 or other viral respiratory infections in a community setting such as a theater.

36) In its August 5th, 2020 letter (enclosed as <u>Exhibit 6</u>), the FDA granted an EUA for certain surgical masks, "limited to the use of the authorized surgical masks, for use in healthcare settings by HCP as PPE to provide a physical barrier to fluids and particulate materials to prevent HCP exposure to respiratory droplets and large particles during surgical mask shortages resulting from the COVID-19 pandemic."

37) In its August 5th, 2020 EUA letter, the FDA also stated that the labeling of the authorized surgical masks must:

- "State that surgical masks are not intended to provide protection against pathogenic biological airborne particulates and are not recommended for use in aerosol generating procedures and any clinical conditions where there is significant risk of infection through inhalation exposure; and

- Not include statements that would misrepresent the product or create an undue risk in light of the public health emergency. For example, the labeling must not include any express or implied claims for: (1) reuse, (2) antimicrobial or antiviral protection or related uses, (3) infection prevention, infection reduction, or related uses, or (4) viral filtration efficiency."

38) Some COVID-19 tests may have EUA from the FDA but to date none have been approved or licensed.

39) Title 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III) of the Federal Food, Drug, and Cosmetic Act states of EUA products that individuals to whom the product is administered must be informed:

- that the Secretary has authorized the emergency use of the product;

- of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

- of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

40) Boch Center has failed to inform guests/customers of the above facts about the COVID-19 tests it offered to conduct for them on site.

41) Boch Center's policy is deceptive in that it implies wearing face masks that are not approved by the FDA for stopping the spread of COVID-19 will stop the spread of COVID-19.

42) Prior to Boch Center issuing its policy, the body of evidence was already present refuting the efficacy of face masks for stopping the spread of SARS-CoV-2/COVID-19. See Exhibit 7 with its stated conclusion that, "The use of cloth facemasks in community settings has become an accepted public policy response to decrease disease transmission during the COVID-19 pandemic. Yet evidence of facemask efficacy is based primarily on observational studies that are subject to confounding and on mechanistic studies that rely on surrogate endpoints (such as droplet dispersion) as proxies for disease transmission. The available clinical evidence of facemask efficacy is of low quality and the best available clinical evidence has mostly failed to show efficacy, with fourteen of sixteen identified randomized controlled trials comparing face masks to no mask controls failing to find statistically significant benefit in the intent-to-treat populations." Though the review was dated November 2021, all or virtually all of the studies it reviews were

published before Boch Center issued its policy claiming face masks are required of guests to "stop the spread" of COVID-19.

43)  Prior to Boch Center issuing its policy, it was publicly known and well-documented that the "COVID-19 vaccines" in use in the U.S.A. do not stop infection or transmission of the SARS-CoV-2 virus. See https://www.cnbc.com/2021/07/30/cdc-study-shows-74percent-of-people-infected-in-massachusetts-covid-outbreak-were-fully-vaccinated.html and https://www.medrxiv.org/content/10.1101/2021.07.31.21261387v4 and https://link.springer.com/article/10.1007/s10654-021-00808-7

44)  Prior to Boch Center issuing its policy, it was well-documented that wearing face masks has a range of physical and psychological harms. (See Exhibit 8 enclosed.)

45)  Boch Center has negligently failed to disclose to guests/customers the known harms of wearing face masks.

46)  A meta-analysis of contact tracing studies published December 14, 2020 in The Journal of the American Medical Association showed asymptomatic COVID-19 spread was negligible at 0.7%. Zachary J. Madewell, Ph.D.; Yang Yang, Ph.D.; Ira M. Longini Jr, Ph.D.; M. Elizabeth Halloran, MD, DSc; Natalie E. Dean, Ph.D., Household Transmission of SARS-CoV-2: A Systematic Review and Meta-analysis, JAMA Network Open, available at https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2774102 (last visited April 18, 2022).

47)  A study including nearly 10 million participants published on November 20, 2020 found that, "There were no positive tests amongst 1,174 close contacts of asymptomatic cases… Virus cultures were negative for all asymptomatic positive and repositive cases,

indicating no 'viable virus' in positive cases detected in this study." Cao, S., Gan, Y.,

Wang, C. et al. Post-lockdown SARS-CoV-2 nucleic acid screening in nearly ten million

residents of Wuhan, China. Nat Commun 11, 5917 (2020).

https://doi.org/10.1038/s41467-020-19802-w (last visited April 18, 2022).

48) The notion that asymptomatic persons are a significant source of spread of COVID-19

had been debunked long before the Boch Center announced its policy challenged herein.

49) Representing Bush, on September 21, 2021 attorney Richard C. Chambers, Jr. ("attorney

Chambers") delivered via the U.S. Postal Service to Boch Center Bush's M.G.L. Ch. 93A

30 Day Notice and Demand letter (enclosed as Exhibit 9).

50) Boch Center, via attorney Bruce Falby of DLA Piper LLP, sent Bush a response letter

dated September 27, 2021 (enclosed as Exhibit 10).

51) In its response letter, Boch Center cited no medical or legal references.

52) In its response letter, Boch Center threatened to seek sanctions per an unspecified "Rule

11" if Bush asserted his constitutionally-protected legal rights via litigation.

53) On behalf of Bush, attorney Chambers had the U.S. Postal Service deliver via certified

mail to the Defendant's counsel on November 17th, 2021 a reply letter dated November

15th, 2021 again requesting a fair resolution of the Boch Center's violations of Bush's

civil and consumer rights (enclosed as Exhibit 11).

54) To this date Boch Center has failed to respond to Bush's letter dated November 15th,

2021.

55) To this date Boch Center has failed to acknowledge or address the issue that face masks

are medically inappropriate for Bush despite having been informed of that in Bush's

M.G.L. Ch. 93A Notice and Demand letter.

56) Despite Bush having communicated that he did not want a refund and to the contrary wanted his legal rights honored and the Boch Center's policy brought into conformance with applicable laws, on or about November 23rd, 2021 Bush was shocked and dismayed to learn that Boch Center unilaterally without authorization took Bush's tickets to the Cirque Dreams Holidaze show away and issued Bush a refund of his purchase price of $244.30.

57) Boch Center failed to communicate to Bush that Boch Center took his Cirque Dreams Holidaze show tickets away.

58) Boch Center failed to communicate to Bush that it issued him a refund or why it had done so without his permission.

59) The fact that Boch Center took Bush's Cirque Dreams Holidaze show tickets away against his wishes caused him to experience severe anxiety, sadness, humiliation, and despair.

60) On December 2, 2021 Bush was shocked and dismayed to receive an email message titled "Subject: Important Safety Information For Cirque Dreams Holidaze" from Boch Center. (Enclosed as Exhibit 12).

61) The December 2, 2021 email message caused Bush to suffer further anxiety, sadness, humiliation, and despair.

62) Boch Center has never alleged that Bush is a direct threat.

63) Boch Center has never alleged that Bush is a contagious carrier of SARS-CoV-2/COVID-19.

*Additional Factual Background as Context*

64) The virus associated with the infectious disease COVID-19—SARS-CoV-2—mutates readily, is airborne and highly transmissible, and has non-human animal reservoirs.

65) Eminent epidemiologist and professor of medicine at Stanford University Dr. Jay Bhattacharya and professor of economics at George Mason University Donald. J. Boudreaux explained in an August 2021 article published in the Wall Street Journal that no degree of oppressive measures or violation of civil liberties can eradicate or contain COVID-19. (See Exhibit 13 enclosed.)

66) Furthermore, they pointed out what has been self-evident to anyone willing to acknowledge the obvious: attempting to eliminate this germ and infectious disease which cannot be contained or eliminated without regard for civil liberties and other aspects of public health is both futile and harmful.

67) The Boch Center's policy makes the claim that it is intended to "stop the spread" of COVID-19.

68) As stopping the spread of COVID-19 is impossible, the policy's claim is deceptive.

69) Boch Center could have used alternative measures to mitigate the spread of pathogenic germs in its facilities without violating civil or consumer rights, such as ventilation and air treatment technologies.

70) According to the Massachusetts Department of Public Health's data for the 7 day period ending December 25th, 2021, there were 20, 247 new COVID-19 cases amongst "fully vaccinated" residents, constituting 44% of new cases in that time period.

71) On December 20, 2021, Boston MA Mayor Michelle Wu announced that starting January 15, 2022 people over the age of 12 would be required to show proof of COVID-19 vaccination for entry to certain public indoor spaces.

72) On January 5, 2022 Bush received an email message from Boch Center announcing a new COVID-19 Policy and Safety Measures including that starting January 15th, 2022, "per the City of Boston's new vaccine requirement for indoor spaces… For patrons ages 12 and up, full vaccination is required to attend any performance." (See <u>Exhibit 14</u>.)

73) The Boch Center's January 5, 2022 email message did not include any accommodations for patrons' individual medical or religious needs or exemptions.

74) Bush submits that Mayor Wu and other municipal officials do not have the constitutional and/or legal authority to require people to show proof of vaccination to enter public spaces such as theaters.

75) No order, mandate, policy, or the like from government officials or private entities can supersede or override laws.

## COUNT I

*(Breach of Contract)*

76) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

77) In and around July of 2021, Boch Center offered tickets to upcoming shows at its theaters to Bush for a price.

78) When Bush accepted Boch Center's offer and tendered consideration by purchasing those tickets in July 2021, Boch Center communicated no conditions contingency (i.e. requirement) for Bush or other show guests to take medical tests, show proof of "vaccination" or wear face masks/coverings.

79) After Bush's ticket purchases, Boch Center communicated new conditions contingencies (i.e. requirements) of show guests to show proof of "COVID-19 vaccination" or a negative COVID test and wear face masks to Bush.

80) By its conduct, Boch Center breached a valid contract with Bush.

81) Boch Center's conduct constitutes a material breach of the contract.

82) Bush has suffered and been damaged as a consequence of Boch Center's material breach complained of herein.

83) Bush is entitled to be made whole for and on account thereof.

## COUNT II

*(Breach of Covenant of Good Faith and Fair Dealing)*

84) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

85) By its conduct, Boch Center breached the covenant of good faith and fair dealing.

86) As a direct and proximate result of Boch Center's failure to exercise good faith and fair dealing, Mr. Bush has been damaged.

## COUNT III

*(Misrepresentation)*

87) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

88) Boch Center made materially false representations to Bush to induce him to enter into a consumer transaction with Boch Center.

89) Boch Center made the false representations with the intention that Bush would rely on the same, to his detriment, in making his decision to engage in the transaction and make payment on the same.

90) In making his decision, Bush did in fact rely on Boch Center's representations as true, and such reliance was reasonable under the circumstances.

91) As a result of Boch Center's intentional misrepresentations, Bush has been damaged.

## COUNT IV

*(Violation of M.G.L. Chapter 93A)*

92) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

93) Boch Center is engaged in trade and commerce for the purposes of M.G.L. c. 93A.

94) Boch Center's conduct throughout this matter has been unfair and deceptive which conduct includes, but is not limited to, that which is set forth in the 93A Notice letter and the facts section set forth above and incorporated herein.

95) As a result of Boch Center's unfair and deceptive acts, Bush has been severely damaged in mind and body.

96) Boch Center's unfair and deceptive acts were committed in an intentional, willful and knowing manner.

97) There is no legitimate good faith defense that could tend to support or justify Boch Center's unfair and/or deceptive conduct.

## COUNT V

*(Violation of the Americans with Disabilities Act 42 U.S.C. § 12101 et seq)*

*(De jure Disability)*

98) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

99) Bush has a de jure disability as defined under the Americans with Disabilities Act, in that his physician has specifically advised against the wearing of face masks in consultation with, and in review of, the Plaintiff's medical status.

100) Under the Americans with Disabilities Act, Boch Center was required to provide a reasonable accommodation to Bush.

101) Boch Center offered no accommodation whatsoever to Bush.

102) The reasonable accommodation in this case was not to bar Bush from the life activity but to exempt Bush from compliance with the policy.

103) As a result of this failure by Boch Center, Bush was denied his right of access required by the Americans with Disabilities Act and was otherwise harmed.

## COUNT VI

*(Violation of the Americans With Disabilities Act 42 U.S.C. § 12101 et seq)*

*(De facto Disability)*

104) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

105) Had the Boch Center's policy not barred all people unable to wear face masks regardless of their medical needs, Bush would have been able to access the Boch Center's places of public accommodation and access the services for which he paid in advance.

106) Boch Center's face mask policy therefore created the condition leading to the bar to access.

107) Any disability created under the Americans with Disabilities Act was therefore a result of the Boch Center's action; by definition, it is the masking policy itself which leads to disability, and which would evaporate with the termination of the policy or exemption to it.

108) This de facto disability, in which an entity first acts, then discriminates on that basis, is viewed under a stricter standard of review, as opposed to merely "reasonable accommodation."

109) Bush has been harmed by denial of access under the Americans with Disabilities Act based upon Boch Center's action creating de facto disability and thereby denying him his access rights protected by law, and has otherwise been harmed.

## COUNT VII

*(Violation of M.G.L. Ch. 272 §§ 92A and 98)*

110) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

111) Boch Center's policy deprived certain customers including Bush of the "full enjoyment of the accommodations, advantages, facilities or privileges offered to the general public" in violation of civil right M.G.L. Ch. 272 §98.

112) Upon Bush having informed Boch Center its policy violated M.G.L. Ch. 272 §92A's and §98's prohibition against certain forms of discrimination, Boch Center failed to take any action to bring its policy into conformance with those laws.

113) As a direct and proximate result of Boch Center's policy's violation of Bush's civil rights under those laws, Bush has been damaged.

## COUNT VIII

*(Negligent Infliction of Emotional Distress)*

114) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

115) By selling tickets to its shows to Bush without imposing medical requirements and subsequently imposing medical requirements to attend those shows that Bush could not meet, Boch Center negligently inflicted emotional distress upon Bush.

116) By imposing medical requirements on Bush to attend the shows for which he had purchased tickets that are unlawfully discriminatory and which Bush cannot meet, Boch Center negligently inflicted emotional distress upon Bush.

117) By using the Boston Public Health Commission's Order Requiring Face Coverings In The City Of Boston as justification for its face mask policy and having failed to allow for the medical exemption(s) the Order specified and which apply to Bush, Boch Center negligently inflicted emotional distress upon Bush.

118) By unlawfully segregating Bush out of its place of public accommodation in violation of the Americans with Disabilities Act, Boch Center negligently inflicted emotional distress upon Bush.

119) By unlawfully segregating Bush out of its place of public accommodation in violation of M.G.L. Ch. 272 §§ 92A and 98, Boch Center negligently inflicted emotional distress upon Bush.

120) By unlawfully depriving Bush of the recreation he rightfully expected and was legally entitled to enjoy with his wife in its place of public accommodation, Boch Center negligently inflicted emotional distress upon Bush.

121) By making no effort to bring its unlawfully discriminatory policy into conformance with applicable laws when Bush brought that violation and its adverse impact on him to its attention, Boch Center negligently inflicted emotional distress upon Bush.

122) By refusing to honor Bush's medical exemption(s) to its policy, Boch Center negligently inflicted emotional distress upon Bush.

123) By taking Bush's show tickets away and issuing him a refund he had explicitly stated he did not want in response to Bush offering to help Boch Center bring its policy into conformance with applicable civil rights laws, Boch Center negligently inflicted emotional distress upon Bush.

## COUNT IX

*(Violation of Title 18 U.S.C. § 242 and 42 U.S.C. § 1983)*

124) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

125) Boch Center had reason to know its policy violated Bush's legal rights under Title III of the Americans with Disabilities Act and M.G.L. Ch. 272 §92A, as Bush's M.G.L. Ch. 93A Notice and Demand letter informed Boch Center of that.

126) After receiving Bush's M.G.L. Ch. 93A Notice and Demand Letter, Boch Center failed to act to bring its policy into conformance with applicable laws or to rectify its violation of Bush's legal rights.

127) Boch Center used Boston Public Health Commission's Order Requiring Face Coverings In The City Of Boston dated August 20, 2021 as justification for its face mask policy.

128) That Boston Public Health Commission Order stated that, "face coverings are not required for children under two years of age, anyone who has trouble breathing, anyone

who is unconscious, incapacitated or otherwise unable to remove the mask without assistance, or anyone who due to disability is unable to wear a mask."

129) Boch Center's policy allowed for none of the exemptions the Boston Public Health Commission Order specified.

130) Boch Center used Boston Mayor Wu's announced proof of COVID-19 vaccination for entry to certain public indoor spaces procedure as justification for the Boch Center's new policy announced in its January 5th, 2022 email message to Bush.

131) Boch Center used the color of law (specifically, the Boston Public Health Commission Order and Boston Mayor Wu's announced COVID-19 proof of COVID-19 vaccination for entry procedure) to violate Bush's legal rights.

132) Demonstrating utter contempt for Bush's legal rights he had communicated in his M.G.L. Ch. 93A Notice and Demand letter, Boch Center unilaterally took Bush's tickets away and issued him a refund for his Cirque Dreams Holidaze show tickets' purchase price—despite Bush having communicated he wanted his legal rights honored, not a refund.

133) Bush has been severely damaged as a result of Boch Center's violations of his legal rights under the color of law.

134) Nominal damages and mere reimbursement of legal expenses would be insufficient to compensate Bush for Boch Center's violations of Bush's civil rights and insufficient to deter Boch Center from further such civil rights violations.

WHEREFORE, the Plaintiff, Michael Bush, prays for:

    1. The Court, after trial, to determine that the Defendant violated the Plaintiff's rights under the Americans with Disabilities Act, violated M.G.L. Ch. 93A,

violated M.G.L. Ch. 272 §§ 92A and 98, breached their contract and the covenant

of good faith and fair dealing, and negligently inflicted emotional distress upon

the Plaintiff.

2.  Declaration that the Defendant's policy is unlawful and void,

3.  This Court to enjoin the Defendant from religious and medical discrimination in

    its places of public accommodation, and

4.  Judgment to be entered against the Defendant for compensatory, presumed,

    and/or punitive damages in the amount of $800,000 and that the Plaintiff be

    awarded treble damages, interest, costs, attorney fees, and such other relief as this

    Court may deem just and proper.


*Jury Claim*

The Plaintiff, Michael Bush, requests that he be granted a trial by jury on all issues so triable.

Respectfully submitted,
The Plaintiff
By his attorney,

DATED: April 19, 2022

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Email: Richard@chamberslawoffice.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

DATED: April 19, 2022

<u>*/s/ Richard C. Chambers, Jr., Esq.*</u>
Richard C. Chambers, Jr., Esq.