**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MICHAEL BUSH, <br><br>         Plaintiff, <br><br> v. <br><br> THE WANG CENTER FOR THE PERFORMING ARTS, INC. d/b/a Boch Center, <br><br>         Defendant. | Case No.: 1:22-cv-10473-GAO |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**THE WANG CENTER FOR THE PERFORMING ARTS, INC. D/B/A BOCH**
**CENTER'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

This action is one of multiple cases brought in this Court by Michael Bush ("Plaintiff" or "Mr. Bush") seeking to invalidate policies intended to protect the public from the spread of COVID-19.[1] In this iteration of his continued efforts, Plaintiff contends that The Wang Center for the Performing Arts, Inc. d/b/a Boch Center ("The Wang Center" or "Defendant") engaged in wrongful and discriminatory conduct by implementing policies requiring individuals over the age of 12 attending The Wang Center performances and events to wear face masks, demonstrate proof of vaccination, and/or provide negative COVID-19 tests. *See* Compl.[2] ¶¶ 11, 60, 72. Specifically, Mr. Bush alleges that The Wang Center's COVID-19 safety policies discriminated against him on the basis of his "naturally-acquired immunity" and his "contraindication" for mask wearing (which he claims is a "disability") and that the policies caused him to experience "severe anxiety, sadness, humiliation, and despair." Compl. ¶¶ 12, 23, 59.

As a result of this purported misconduct, Mr. Bush has brought a battery of claims against The Wang Center including for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), misrepresentation (Count III), violation of G.L. c. 93A (Count IV), violation of the Americans with Disabilities Act ("ADA") (Counts V and VI), violation of G.L. c. 272 §§ 92A and 98 (Count VII), negligent infliction of emotional distress (Count VIII), and violation of title 18 U.S.C. § 242 and 42 U.S.C. § 1983 (Count IX). As discussed herein, each of these causes of action fail because: (i) Plaintiff's breach of contract claim is barred by contractual waiver and release provisions and Plaintiff has not identified any provisions that were allegedly breached, (ii) Plaintiff has not alleged any facts indicating a lack of good faith, or unfair or deceptive conduct on the part of The Wang Center in adopting its COVID-19 policies, (iii) Plaintiff fails to allege any actionable representation made by The Wang Center concerning its policies that was false at the time it was made, (iv) The Wang Center is a charitable institution and the facts alleged do not state a Chapter 93A claim, (v) Plaintiff does not have a cognizable disability under the ADA, has not alleged he was denied a reasonable accommodation, and is not a "qualified individual," (vi) Plaintiff's G.L. c. 272 §§ 92A and 98 claim is

---

[1] *See Michael Bush v. Acton-Boxborough Regional School District, et al.*, Case No. 1:21-cv-12039-IT (D. Mass. 2021); *Michael Bush, et al. v. Linda Fantasia, et al.*, Case No. 1:21-cv-11794-ADB (D. Mass. 2021).

[2] Defendant refers herein to Plaintiff's First Amended Complaint as "Complaint" and "Compl."

premature and does not allege a qualifying "disability," (vii) plaintiff has not alleged any physical harm resulting from his emotional distress, and (viii) The Wang Center is not a state actor.

Thus, The Wang Center respectfully requests that this Court grant its Fed. R. Civ. P. 12(b)(6) motion to dismiss ("Motion") with prejudice and preclude Mr. Bush from proceeding with his frivolous claims.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must set forth factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gaetani v. Hadley*, No. 14-30057-MGM, 2015 U.S. Dist. LEXIS 1952, at *2 (D. Mass. Jan. 8, 2015) (citations omitted). The allegations must actually state a "plausible . . . case for relief," *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010), which "requires the reviewing court to draw on its judicial experience and common sense." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quotes and citation omitted). "[C]onclusory legal conclusions are not credited." *Semmami v. UG2 LLC*, No. 18-cv-12396-DJC, 2019 WL 2249705, at *1 (D. Mass. May 24, 2019) (citations omitted).

When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document . . . that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Thus, where a plaintiff's allegations are centered upon an agreement that defines the parties' relationship, the terms of that contract are ripe for examination and enforcement through a Fed. R. Civ. P. 12(b)(6) motion. *See Bagg v. HighBeam Rsch., Inc.*, 862 F. Supp. 2d 41, 44 (D. Mass. 2012).

## FACTUAL BACKGROUND

The Wang Center is a nonprofit corporation which provides performing arts entertainment and cultural educational experiences for audiences. Compl. ¶ 3; *see also* The Wang Center's website, available at https://www.bochcenter.org/events/all. Tickets to The Wang Center events may be purchased by customers in a number of ways, including through hyperlinks provided in The Wang Center's promotional emails directing customers to Ticketmaster. Compl. ¶ 4.

In his Complaint, Plaintiff alleges that on July 11, 2021, he "purchased tickets online to the Il Divo 'For Once In My Life' Tour show to be held at the Boch Center Wang Theatre on September 3rd, 2021" (the "Il Divo Show"). Compl. ¶ 5. Subsequently, on July 25, 2021, Mr. Bush allegedly "[u]s[ed] the hyperlinks in the Boch Center's promotional email messages to Bush," to purchase tickets to the Cirque Dream Holidaze show to be held at the Boch Center Shubert Theatre on December 11, 2021 (the "Cirque Dream Show")." Compl. ¶ 4. Copies of the two tickets purchased by Mr. Bush through Ticketmaster for the Il Divo Show and the Cirque Dream Show (collectively, "The Wang Center Shows") are attached hereto as **Exhibit A** and authenticated by the Affidavit of Michael Szczepkowsi.[3]

### A.   Relevant Ticketmaster Terms and Notices

The tickets purchased by Mr. Bush for The Wang Center Shows state that the "ticket[s] [are] [] revocable license[s] to attend the event listed on the front of the ticket" which are "subject to the full terms found at www.ticketmaster.com." *See* Exhibit A, Mr. Bush's Tickets to The Wang Center Shows. Thus, the tickets may be revoked by The Wang Center, and the terms governing customers' purchase of the tickets found at www.ticketmaster.com (the "Terms") are incorporated by reference and binding on ticket purchasers.

Ticketmaster's Terms are publicly available and accessible to customers via its website and state that customers "[e]xpressly agree to the[] Terms" by "visiting or using [Ticketmaster's] Site." *See* Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US.[4] The Terms contain a number of provisions that apply to the purchase of tickets, including provisions applicable to "Event Organizer[s]" –

---

[3] Mr. Szczepkowski is the Vice President and General Manager of The Wang Center.  *See* Affidavit of Michael Szczepkowski. This Court may consider the tickets for The Wang Center Shows because the "authenticity" of the tickets is not disputable the tickets are "central to plaintiffs' claim[s]," and the tickets are "sufficiently referred to in the complaint." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71–72, 74 (1st Cir. 2014); *see also In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 146 (D. Mass. 2001) ("In evaluating a motion to dismiss, the Court may consider documents pertinent to the action or referenced in the complaint.").

[4] The Terms currently available on Ticketmaster's website state that they were "[l]ast [u]pdated: July 2, 2021," before Mr. Bush purchased tickets for The Wang Center Shows on July 11, and July 25, 2021. *See* Ticketmaster Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US. Therefore, this is the version of the Terms that applies to Mr. Bush's claims. *See Bagg v. HighBeam Rsch., Inc.*, 862 F. Supp. 2d 41, 44 (D. Mass. 2012) (examining only the operative agreement that existed "at the time" of the events at issue on a motion to dismiss); *Lowell Sch. Comm. v. United Teachers of Lowell*, 12 Mass. L. Rep. 672 n.1 (2001) (evaluating only the relevant "language" that was "contained in the version of the agreement in effect at the time" that the "disputes presented").

defined as "those who provide events, such as artists, venues, teams, fan clubs, promoters, and leagues."[5]

One such provision provides a waiver and release of liability for Event Organizers like The Wang Center and states:

> "IN NO EVENT WILL [TICKETMASTER] OR [ITS] EVENT ORGANIZERS … BE RESPONSIBLE OR LIABLE TO YOU OR ANYONE ELSE FOR, AND YOU HEREBY KNOWINGLY AND EXPRESSLY WAIVE ALL RIGHTS TO SEEK … DAMAGES OF ANY TYPE … ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE CONTENT, OR ANY PRODUCT OR SERVICE PURCHASED THROUGH THE SITE … REGARDLESS OF WHETHER THE CLAIM IS BASED UPON ANY CONTRACT, TORT, OR OTHER LEGAL OR EQUITABLE THEORY." *Id.*

Ticketmaster's Purchase Policy, which is expressly referenced in, and incorporated by, the Terms, also contains a limitation of liability section.[6] The Purchase Policy's limitation of liability section states that customers "assume all risks, hazards, and dangers arising from or relating in any way to the risk of contracting … COVID-19 … and … waive any and all claims and potential claims against Ticketmaster, Live Nation, and the Event Organizer . . . relating to such risks, hazards, and dangers." (emphasis added)[7]

In addition to the liability disclaimer expressly incorporated in the Terms, Ticketmaster's website contains an Event Safety page which provides notice to consumers that "[e]ach venue determines their own guidelines according to local safety regulations," and directs customers to "check the venue site for more detailed info before going to an event." *See* Ticketmaster's Event Safety Webpage, available at www.ticketmaster.com/event-safety.[8] Ticketmaster's Event Safety page also notes some of the "safety precautions venues are taking, which [a customer] may encounter when attending an event" including "Mask Required" meaning "[t]he venue is requiring fans to wear a mask during the event in public areas (specifics

---

[5] *See* Ticketmaster Purchase Policy, available at https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US, last updated January 1, 2021, before Mr. Bush purchased tickets for The Wang Center Shows on July 11 and July 25, 2021.

[6] *See* Terms ("Our Privacy Policy, Purchase Policy, and any other policies, rules, or guidelines that may be applicable to particular offers or features on the Site are also incorporated into the Terms."); Ticketmaster Purchase Policy, available at https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US.

[7] *See* Ticketmaster Purchase Policy, available at https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US .

[8] This text is available on both Ticketmaster's current Event-Safety webpage, and on the version of the webpage in effect on March 31, 2021, prior to Mr. Bush's ticket purchases in July of 2021. The March 31, 2021 version of the Event-Safety Webpage may be accessed through archive.org at https://web.archive.org/web/20210331155332/www.ticketmaster.com/event-safety. It is appropriate to take judicial notice of materials from archive.org, especially when – as is the case here – the validity of such materials cannot reasonably be called into question. *See Walsh v. Teltech Sys., Inc.*, No. 13-13064-RWZ, 2015 WL 12856456, at *2 (D. Mass. July 30, 2015), aff'd, 821 F.3d 155 (1st Cir. 2016).

will vary)." *Id.*

### B.    Plaintiff's Allegations and Claims

Despite these provisions in the Terms and available via The Wang Center's website, Plaintiff has sued The Wang Center for its alleged conduct relating to the tickets purchased by Plaintiff for The Wang Center Shows. In his Complaint, Plaintiff alleges that he was not informed via "Boch Center's promotional emails or the online purchase process" at the time of his purchase of the tickets that he would have to undergo certain measures to prevent the spread of COVID-19 in order to attend The Wang Center Shows. Compl. ¶ 6. After purchasing tickets to The Wang Center Shows, Mr. Bush alleges that he received three updates from The Wang Center regarding their COVID-19 measures. First, on August 23, 2021, Mr. Bush states that he received an email from The Wang Center providing a safety update (the "First Safety Update"). *Id.* at ¶ 11; *id.* at Exhibit 2. The Wang First Safety Update stated that The Wang Center was "committed to helping stop the spread of COVID-19" and "w[ould] require all patrons to be fully vaccinated or provide a negative COVID test taken within 72 hours of the show" they intend to attend. *Id.* at Exhibit 2. The Wang First Safety Update further informed attendees that the new policy would go into effect on September 14, and that "[g]uests w[ould] be asked to show their vaccination card or test results and a government issued ID prior to entering an event at the Wang or Shubert Theatres." *Id.*

Second, on December 2, 2021, Mr. Bush alleges that he received an email containing an Important Safety Information update for the Cirque Dreams Show ("Second Safety Update"). Compl. ¶ 60; *id.* at Exhibit 12. The Cirque Dreams Safety Update informed patrons that before coming to The Wang Center or purchasing tickets they should "read the health, vaccine and entry policy below" and notified them that: (i) "[v]accinations or proof of negative Covid-19 test[s] [we]re required **FOR ALL PATRONS** at [The Wang Center] theatres regardless of age," and (ii) "[m]asks [we]re also required to be worn in [The Wang Center] theatres per City of Boston requirements." *Id.* at Exhibit 12 (emphasis in original). It stated that patrons ages 12 and older were required to show proof of the following "at the theatre":

(i)    Two doses of an FDA or WHO authorized two dose Covid-19 vaccine, received at least 14 days before the performance

5

(ii)     A negative Covid-19 PCR test taken within 72 hours of the performance

(iii)    A negative Covid-19 rapid antigen test within 72 hours of the performance.

*Id.* The Wang Center also informed attendees that it would provide "[o]n-site testing [] beginning 3 hours prior to curtain time on the day of [the] performance" for those who either forgot their vaccination card or were unable to receive a test ahead of time. *Id.*

Third, on January 5, 2022, Mr. Bush alleges he received an email from The Wang Center announcing new COVID-19 Policy and Safety Measures ("Third Safety Update") which stated that starting January 15, 2022, "per the City of Boston's new vaccine requirement for indoor spaces," "[t]o enter [The Wang Center's] theatres" patrons ages 12 and up had to be fully vaccinated and were required to wear masks in the theatres. Compl. ¶ 72; *see also id.* at Exhibit 14. The January 5 notice further stated that "face coverings must cover the nose and mouth and comply with the CDC guidelines for acceptable face coverings." *Id.* at Exhibit 14 (emphasis omitted). Further, patrons must "[b]e ready to show proof of vaccination," meaning "[t]wo doses of an FDA or WHO authorized Covid-19 vaccine, received at least 14 days before the performance." *Id.*

After learning of The Wang Center's COVID-19 policies, Mr. Bush informed The Wang Center that he intended not to comply with the policies and was subsequently issued a refund of his ticket purchase price by The Wang Center. Compl. ¶ 56. Mr. Bush claims that The Wang Center's refund "caused him to experience severe anxiety, sadness, humiliation, and despair." Compl. ¶ 59. He also claims that had he known of the COVID requirements, "he would not have purchased []tickets," *id.* at ¶¶ 6-7, and takes issue with the First Safety Update, Second Safety Update, and Third Safety Update (collectively, the "Wang Safety Updates"), contending that they are false and misleading and that they "unfairly discriminate[] against [him] for his naturally-acquired immunity" and disability. Compl. ¶¶ 12, 23. Specifically, Plaintiff claims to have "naturally-acquired immunity to SARS-CoV-2/COVID-19 [which] confers resistance to re-infection superior to and protection from COVID-19 disease lasting longer than that conferred by 'COVID-19 vaccinations,'" Compl. ¶ 21, and claims to have a "disability" based on the fact that his "physician has specifically advised him against the wearing of face masks." Id. at ¶¶ 12, 99; *see also id.* at Exhibit 3. Mr. Bush also alleges that The Wang Center's COVID-19 policy is "deceptive in that it implies wearing face masks that are not approved

6

by the FDA for stopping the spread of COVID-19 will stop the spread of COVID-19," and that The Wang Center has "negligently failed to disclose to guests/customers the known harms of wearing face masks." Compl. ¶¶ 41, 45.

On the basis of his apparent belief that The Wang Center has "discriminated" against him and engaged in the other misconduct by issuing him a refund upon his refusal to comply with The Wang Center policies outlined in the Wang Safety Updates, Mr. Bush now brings suit to obtain a judgment in its favor on all counts, a declaration that The Wang Center's COVID-19 policies are "unlawful and void," enjoin The Wang Center from alleged "religious and medical discrimination," and receive a damages award, which he alleges should be in excess of $800,000. *See* Compl. at WHEREFORE Statement ¶¶ 1-4.

## ARGUMENTS

### I.   COUNT I FAILS ADEQUATELY TO PLEAD A BREACH OF CONTRACT CLAIM

#### A.   Plaintiff's Breach of Contract Claim Fails Because Plaintiff Does Not Identify Any Provision of the Terms that was Breached

To adequately plead a claim for breach of contract, a plaintiff must identify a contractual provision that a defendant has breached. *See RI Prop. Wire, LLC v. Linnell*, No. 18-12297-LTS, 2019 WL 4142502, at *4 (D. Mass. Aug. 30, 2019) ("RIPW would need to point to a specific contractual provision which promised that the foreclosure of the Property was not void to support a breach of contract claim against BANA."). Failing to do so warrants dismissal of a Plaintiff's breach of contract claim as inadequately plead. *Id.*[9]

Plaintiff fails to meet this pleading requirement. Plaintiff asserts generally that an agreement with The Wang Center was formed when Mr. Bush purchased tickets for The Wang Center Shows. Compl. ¶¶ 77-80. Mr. Bush also alleges that by "communicat[ing] no conditions contingency" and then requiring patrons to comply with The Wang Center's COVID-19 policies, The Wang Center "breached a valid contract" with him. *Id*. However, he fails to point to a single contractual provision in the Terms that either: (i) mandated that he be

---

[9] *See also Richmond v. Wells Fargo Bank, N.A.*, No. 12-10011-RWZ, 2012 WL 3627644, at *1 (D. Mass. Aug. 22, 2012) (allowing motion to dismiss breach of contract claim where plaintiff failed to "identify any agreement with defendant that obligate[d] defendant to modify their mortgage loan, much less the terms of such agreement that were breached").

allowed entry to The Wang Center Shows without being subject to The Wang Center's policies and protocols, or (ii) prohibited The Wang Center from reimbursing Plaintiff for his tickets upon his objection to The Wang Center policies. There are no such contract Terms.

To the contrary, the Ticketmaster website's Event Safety page explicitly informs customers that event venues (like The Wang Center) may require adherence to COVID-19 safety policies to attend an event.[10] And the Terms explain that the ticket is a <u>revocable</u> license, meaning The Wang Center was free to revoke Plaintiff's license to attend The Wang Center Shows and issue him a refund at any time (including for Plaintiff's objection to or threatened noncompliance with The Wang Center policies).

The Terms' provisions and Ticketmaster's policies contradict the amorphous obligations Mr. Bush seeks to impose upon The Wang Center, mandating dismissal. *See Godines v. EF Explore Am., Inc.*, No. 2184CV1327, 2021 WL 7085170, at *5 (Mass. Super. Dec. 20, 2021) (dismissing plaintiff's breach of contract claim that "she did not receive the travel experience for which she paid" due to the COVID-19 pandemic because the underlying contract recognized that the plaintiff's trip could be cancelled).

### B. Plaintiff's Breach of Contract Claim (and Other Related Claims) Should Be Dismissed Because Plaintiff Released The Wang Center from All Liability Relating to Mr. Bush's Purchase of the Tickets

Other provisions of the Terms bar Plaintiff's claims by releasing The Wang Center from liability stemming from the tickets he purchased for The Wang Center Shows. As discussed above, Ticketmaster's Terms preclude liability on the part of "Event Organizers" like The Wang Center for damages of any type "arising out of or in connection with" Ticketmaster or "any product or service purchased through the site." *See supra* at pg. 4. Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US. By visiting Ticketmaster, customers also agree to waive their rights to seek damages "of any type" "arising out of or in connection with … any product or service purchased through the site" "regardless of whether the claim is based upon any contract, tort, or other legal or equitable theory." *Id.*

Thus, by purchasing tickets to The Wang Center Shows, and thereby agreeing to be bound by the

---

[10] *See supra* at pg. 3-4.

Terms, Mr. Bush agreed that The Wang Center would not be "responsible or liable" to him for damages of any type in connection with his tickets or The Wang Center Shows, and agreed to waive his rights to seek damages "of any type" related to those tickets or The Wang Center Shows. *Id.* Because Plaintiff's claims clearly stem from the tickets he purchased through Ticketmaster to attend The Wang Center Shows, they necessarily fail.[11] *See Nat'l Fed'n of the Blind v. Container Store, Inc.*, No. 15-12984-NMG, 2016 U.S. Dist. LEXIS 98067, at *22 (D. Mass. Mar. 11, 2016) (electronic "'clickwrap' agreements" are "routinely enforced by state and federal courts"); *Dolan v. Chase Home Fin., LLC*, No. 12-11662-GAO, 2015 U.S. Dist. LEXIS 105383, at *31-33 (D. Mass. July 10, 2015) (determining that the "release" at issue "undeniably encompasses" the breach of contract claim, and thus "forecloses" it). This is the case whether or not Plaintiff read or understood the contents of the release contained in the Terms and Purchase Policy.[12]

## II.    PLAINTIFF'S COUNT II BREACH OF IMPLIED COVENANT CLAIM FAILS

Plaintiff's breach of implied covenant of good faith and fair dealing (the "implied covenant") claim fails for a few key reasons. First, Plaintiff's bare bones allegations spanning a total of 3 paragraphs in his Complaint are inadequate in that they merely recite the elements of an implied covenant claim without providing any explanation as to how Plaintiff believes the implied covenant was breached, or what bad faith conduct was allegedly taken by The Wang Center.[13]

Second, even if an implied covenant claim could be inferred through the factual background provided in the Complaint, Plaintiff still fails to state a claim because: (i) the Terms were not breached, (ii) it was not reasonable for Plaintiff to have expected that no COVID-19 safety policies would be imposed, and (iii) Plaintiff has not alleged any dishonesty or bad faith on the part of The Wang Center.

---

[11] Because all of the claims brought by Plaintiff in this action relate to his ticket purchases, Plaintiff's other tort and statutory claims should also be precluded by operation of the release and waiver in the Terms.

[12] *See Doe v. Cultural Care, Inc.*, 2011 WL 1048624, at *5 (D. Mass. Mar. 17, 2011) ("It is a rule in this Commonwealth that the failure to read or to understand the contents of a release, in the absence of fraud or duress, does not avoid its effects.") (quotes and citation omitted); *Sharon v. City of Newton*, 437 Mass. 99, 105 (2002) (by signing a release, plaintiff and her father were deemed to have "understood it" despite plaintiff's claim that she did not realize that by signing the release she was waiving future claims).

[13] *See* Compl. ¶¶ 84-86 (stating only that "[b]y its conduct, Boch Center breached the covenant of good faith and fair dealing" and "[a]s a direct and proximate result of Boch Center's failure to exercise good faith and fair dealing, Mr. Bush has been damaged."); *Saxena v. Univ. of Massachusetts Med. Sch.*, 442 F. Supp. 3d 395, 404 (D. Mass. 2020) (dismissing complaint where plaintiff's allegations in support of his claims were "based on legal conclusions").

### A.   The Terms Bar Plaintiff's Claim

In Massachusetts, although "every contract is subject to an implied covenant of good faith and fair dealing," *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473 (1991), "[t]he scope of the covenant is only as broad as the contract that governs the particular relationship." *Ayash v. Dana–Farber Cancer Inst.*, 443 Mass. 367 (2005). Thus, where there has been no breach of any contractual duty, there is no breach of the implied covenant. *See Godines v. EF Explore Am., Inc*., No. 2184CV1327, 2021 WL 7085170, at *6 (Mass. Super. Dec. 20, 2021) (dismissing implied covenant claim where "there was no breach of the contract" because the implied covenant "may not be 'invoked to create rights and duties not otherwise provided for in the existing contractual relationship.") (citations omitted).

For the reasons discussed in Section I, *supra*, the Terms have not been breached; there is nothing in the Terms prohibiting The Wang Center from imposing COVID-19 safety measures or curtailing The Wang Center's right to issue Mr. Bush a refund upon his stated intent not to comply with those measures. Thus, Plaintiff's implied covenant claim seeks to create rights or duties beyond those that the parties agreed to when they entered into the Terms and necessarily fails. *See Speleos v. BAC Home Loans Servicing, L.P.*, 755 F.Supp.2d 304, 312 (D. Mass. 2010) (dismissing implied covenant claim where plaintiffs had not alleged the breach of any specific contractual provision); *Uno Rest., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 388 (2004) (declining to "impose an additional duty" on Defendants beyond that which was required by the parties' contract through the implied covenant).

### B.   It Was Not Reasonable to Expect The Wang Center Not to Adopt COVID-19 Safety Measures

When Mr. Bush purchased his tickets to The Wang Center Shows, COVID-19 remained rampant. In fact, the impetus for The Wang Center's COVID-19 protocols came from the City of Boston's guidelines and its stated vaccine requirement for indoor spaces. *See* Wang Center Safety Updates. Plaintiff does not allege that he was not aware of the COVID-19 pandemic at the time he purchased his tickets to The Wang Center Shows, or dispute that federal and local government guidelines recommended imposition of safety measures to prevent the spread of COVID-19. Yet, incredulously, he contends that he was "shocked and dismayed"

when he found that The Wang Center was adopting such measures, apparently expecting The Wang Center

not to adopt COVID-19 measures in line with federal and local guidelines. Compl. ¶ 60. Further, as discussed

above at pg. 4-5, Mr. Bush was on notice that The Wang Center might impose safety measures related to the

COVID-19 pandemic, including mask mandates. Thus, Plaintiff's expectation regarding The Wang Center's

lack of COVID-19 policies was patently **_un_**reasonable, warranting dismissal of his implied covenant claim.

*See Ocasio-Hernandez*, 640 F.3d at 12 (1st Cir. 2011) (stating that in ruling on a motion to dismiss, a court

"draw[s] on its judicial experience and common sense" in evaluating claim plausibility).

### C.      Lack of Good Faith

Plaintiff's implied covenant claim should also be dismissed based on Plaintiff's failure to plead any

lack of good faith on the part of The Wang Center.[14] Aside from his conclusory allegation that The Wang

Center has "fail[ed] to exercise good faith and fair dealing," Mr. Bush has not plead <u>any</u> plausible dishonest

purpose, conscious wrongdoing, or self-interest or ill will motivating The Wang Center's decision to

implement COVID-19 safety precautions. The Wang Center's stated motivation in implementing the COVID-

19 measures was to "help[] stop the spread of COVID-19," and ensure compliance with the City of Boston's

vaccine requirements for indoor spaces, and Plaintiff has not alleged any facts that contradict this motivation.

*See* Wang Safety Updates. Further, the idea that The Wang Center acted with a dishonest purpose or ill will

by imposing COVID-19 policies is belied by commonsense – if anything, imposing these policies could

detriment The Wang Center by causing patrons not to attend shows for which they otherwise would have

purchased a ticket. This makes all the more implausible Plaintiff's conclusory bad faith allegations.[15]

### III.      PLAINTIFF'S COUNT III MISREPRESENTATION CLAIM IS INADEQUATELY PLEAD

Plaintiff's    misrepresentation    claim    alleges    that    The    Wang    Center    made    "intentional

---

[14] *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013) (stating that a plaintiff must "present evidence of bad faith or an absence of good faith" to adequately plead an implied covenant claim which "carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.").

[15] *See Stamos v. Verdasys, Inc.*, No. CIV.A. 12-622-BLS1, 2013 WL 4008178, at *8 (Mass. Super. May 22, 2013) (dismissing plaintiff's implied covenant claim where plaintiff "could not plausibly claim that the motive behind [the defendant's actions was a] desire to cheat him out of the stock he was entitled to"); *Tactician Corp. v. Subway Int'l, Inc.*, No. CV 21-10973-JGD, 2021 WL 5640695, at *4 (D. Mass. Dec. 1, 2021) (dismissing implied covenant claim and explaining that the court must distinguish the complaint's factual allegations "from its conclusory legal allegations (which need not be credited).") (citation omitted).

misrepresentations" that were false "to induce him to enter into a consumer transaction with [The Wang] Center." Compl. ¶¶ 88-91. To state a claim based on fraudulent misrepresentation, a plaintiff must show "that the defendants made a false statement" or "suppli[ed] false information." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,* 455 Mass. 458, 471 (Mass. 2009); *see also Int'l Floor Crafts, Inc. v. Adams*, 477 F.Supp.2d 336, 341 (D. Mass. 2007).[16] Further, because "misrepresentation is considered a species of fraud," the civil rules require that "the circumstances [] constitut[ing] fraud … be stated with particularity." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004); *see also* Fed. R. Civ. P. 9(b).

Plaintiff's misrepresentation claim fails to point to any specific statement that forms the basis of his claim. *See* Compl. ¶¶ 88-91. Instead, it appears that the misrepresentation forming the basis of Plaintiff's claim is The Wang Center's alleged failure to disclose the COVID-19 policies it would adopt in the future.[17] Regardless of whether labeled a misrepresentation or an omission, Plaintiff's claim fails because the subject matter was of a "fundamentally predictive nature" and not false at the time of the supposed fraud. *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1199, 1202 (D. Mass. 1990) (stating that a defendant may not be held liable if the representation "concerned a matter of opinion, estimate or judgment, which was not susceptible of actual knowledge at the time of its utterance.").[18] Plaintiff does not allege, for example, that The Wang Center knew at the time Plaintiff purchased tickets that it would later require adherence to these COVID-19 policies. Thus, to the extent any statement was omitted or made by The Wang Center related to its future

---

[16] *Kruskall v. Sallie Mae Serv., Inc.*, No. 15-cv-11780, 2016 WL 1056973, at *6 (D. Mass. Mar. 14, 2016) (dismissing Plaintiff's claim where plaintiff's "allegations regarding misrepresentations [we]re exceedingly sparse" and "[e]ven putting aside the requirements of Rule 9(b) as to any claim of negligent misrepresentation, [plaintiff] still d[id] not adequately allege a particular false statement of material fact as to []his claim."); *see also Rogers v. Nstar Elec.*, 389 F. Supp. 2d 100, 110 (D. Mass. 2005) (allowing motion to dismiss where plaintiff did not allege a specific material misrepresentation).

[17] *See* Compl. ¶ 6 ("[n]owhere in the Boch Center's promotional emails or the online purchase process was it disclosed to Bush that he would have to undergo 'vaccination(s)', medical test(s) and/or wear a mask in order to attend the shows").

[18] *See also Buckley v. Goldman, Sachs & Co.*, No. CIV.A.02-CV-11497RGS, 2005 WL 1206865, at *9 (D. Mass. May 20, 2005) (dismissing fraud claim based on "misrepresentation by omission" as to "predictive statements" about the market environment); *Hallmark Inst. of Photography, Inc.*, 518 F. Supp. 2d at 332 (D. Mass. 2007) (dismissing misrepresentation claim since "Defendant simply could not have known when it made its prediction … what the results … would actually be" and there was no allegation that defendant "knew, or even could have known, that its prediction was untrue when it made the statement"); *4 MVR, LLC*, 2013 WL 310290, at *5 (dismissing misrepresentation claim where plaintiff did not plausibly allege that the statements were false when made).

COVID-19 policies, it was of a fundamentally predictive nature that cannot form the basis of a fraud claim.[19]

## IV.     PLAINTIFF'S COUNT IV 93A CLAIM IS INADEQUATELY PLEAD

Chapter 93A does not apply to The Wang Center because it is a charitable institution and the COVID-19 policies forming the basis of Plaintiff's claim were "made in the context of furthering [The Wang Center's] core mission" of providing performing arts entertainment.[20] *Moran v. Stonehill Coll., Inc.*, No. 2077CV00431, 2021 WL 965754, at *7 (Mass. Super. Feb. 16, 2021) (dismissing 93A claim brought against nonprofit school that refused to refund tuition and fees since the "decision to reimburse certain charges but not others was part of Stonehill's larger process of deciding how best to continue educating its students when a pandemic forced it to shutter its campus and made in-person instruction impossible.").[21]

Even if Plaintiff could assert a 93A claim against The Wang Center, his claim would fail. Seeking to protect patrons from COVID-19 does not amount to "extreme or egregious business wrong or commercial extortion," nor "rise to some similar level of "rascality" that raises "an eyebrow of someone inured to the rough and tumble of the world of commerce." *Peabody Essex Museum, Inc. v. U.S.  Fire Ins. Co.*, 802 F.3d 39, 54 (1st Cir. 2015) (citation omitted). Thus, The Wang Center's alleged actions were not unfair or deceptive.[22]

## V.     PLAINTIFF'S COUNT V AND COUNT VI ADA CLAIMS BOTH FAIL

To state an ADA claim, a plaintiff must allege that (1) he is a "qualified individual with a disability";

---

[19] Plaintiff's reliance on any such omission or representation is also contradicted by Ticketmaster's website which expressly informs customers that each venue may impose their own COVID-19 policies, including face mask mandates. Therefore, his reliance on any "misrepresentation" or omission communicated by The Wang Center was not reasonable. *See Saint Consulting Grp., Inc. v. E. Ins. Grp., LLC*, No. MICV201202218H, 2015 WL 2062202, at *9 (Mass. Super. Feb. 25, 2015), judgment entered sub nom. The Saint Consulting Grp., Inc. v. E. Ins. Grp. LLC (Mass. Super. 2015) (Plaintiff's reliance was not reasonable as a matter of law where the representations were "specifically contradicted by the terms of the written contract.").

[20] *See* The Wang Center's website, available at https://www.bochcenter.org/ (The Wang Center's core mission is providing performing arts entertainment and cultural education experiences to diverse audiences).

[21] *See also Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 492-93 (1986) (holding that plaintiff's 93A claim against Planned Parenthood was foreclosed because "the Legislature intended to exclude the activities engaged in by a [charitable] corporation such as PP, Inc. from the reaches of c. 93A."); *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 72 (1st Cir. 2020) (93A claim did not apply to college that was a nonprofit); *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 23, 26 (1997) (It is well established law that while "[a]n entity's 'status as a charitable corporation is not ... dispositive of the issue whether ch. 93A applies[,]' [i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission.").

[22] Plaintiff's 93A claim should also be dismissed because it is based on the same conduct forming the basis of his misrepresentation and breach of contract claims – both of which fail. *See Hallmark Inst. of Photography, Inc.*, 518 F. Supp. 2d at 332 ("Hallmark's claim under Chapter 93A must be dismissed since it has failed to establish any breach of contract, misrepresentation, or other actionable conduct by CollegeBound.").

(2) he was either excluded from participation in, or denied the benefits of, a public entity's "services, programs or activities," or was otherwise discriminated against; and (3) such exclusion, denial of benefits or discrimination was by reason of his disability. *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000). Counts V and VI both fail because Plaintiff has not adequately alleged that he has any cognizable disability under the ADA or was ever denied any reasonable accommodation by The Wang Center, and because Plaintiff is not a "qualified" individual with a disability.

### A.     Plaintiff Has Not Alleged He Has Any Cognizable Disability

A plaintiff has the burden of establishing a disability in order to state a discrimination claim under the ADA. *See Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010). A disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); *see also Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeking, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). And a "physical or mental impairment" means "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems ...," such as the respiratory or immune systems. 28 C.F.R. § 35.108(b)(1)(i).

Mr. Bush alleges that he has a disability[23] based on the fact that: (i) "his physician has specifically advised against the wearing of face masks in consultation with, and in review of, the Plaintiff's medical status," Compl. ¶ 99, (ii) he has "naturally-acquired immunity to COVID-19," *id.* at ¶ 20, and (iii) he has "contraindications to mask wearing for a private medical condition." *See* Compl. at Exhibit 3. These vague references to some underlying "medical status" or "medical condition" are too conclusory to "support a plausible inference that [Plaintiff] is 'disabled' under the ADA." *Quattrucci v. Massachusetts Gen. Hosp.*, No. CV 17-11250-GAO, 2020 WL 1323111, at *3 (D. Mass. Mar. 20, 2020) (dismissing ADA claim where

---

[23] It is unclear what distinction is meant by a "de facto" and "de jure" disability, given that neither term is used in connection with ADA claims under 1st Circuit case law.

plaintiff's complaint "d[id] not contain any factual detail other than his own conclusory statement that he [wa]s disabled ... [and] lack[ed] specific allegations about any impairment, any limitation on a life activity, or any perception by MGH about such impairment.").

Plaintiff also has not identified any major life activity that has been limited by his alleged "contraindications," and "medical status" and has not provided any details as to the severity of his impairment or how it has substantially limited his major life activities. To the extent he impliedly claims attending a show at The Wang Center is a major life activity, his claim fails because recreationally attending a show is at best a hobby or pastime which does not rise to the level of a "major life activity" like sleeping, seeing, walking, learning, or working. *See Bryant v. Caritas Norwood Hosp.*, 345 F. Supp. 2d 155, 165 (D. Mass. 2004) (nighttime driving held not a "major life activity"); *Harding v. Cianbro Corp.*, 436 F. Supp. 2d 153, 173 (D. Me. 2006) (climbing held not a "major life activity").[24] Plaintiff's claim fails on this basis. *See Lane v. Potter*, 699 F. Supp. 2d 358, 363 (D. Mass. 2010) (granting motion to dismiss where plaintiff failed to adequately allege he had a disability because "plaintiff's sole limitations [we]re climbing ladders and driving long distances" and "Plaintiff's level of restriction in this area d[id] not qualify as 'severe'").

### B. Plaintiff Has Not Alleged That He Ever Requested Or Was Denied A Reasonable Accommodation By The Wang Center

Plaintiff's ADA claims (and his G.L. c. 272, §§ 92A and 98 claim) are premised on his "belie[f] [that] he would be barred from attending the shows for which he had purchased tickets on the basis of his disability." Compl. ¶ 12. Notably, Plaintiff does not allege that he was ever actually barred from entry or that he requested and was denied a reasonable accommodation on the basis of his disability. Instead, he demanded that The Wang Center rescind its policies entirely. Compl. ¶¶ 73, 100, 101, 102; *see also* Michael Bush's September 16, 2021 Demand Letter. This demand was patently <u>un</u>reasonable; The Wang Center's safety policies were

---

[24] He also alleges – rather confusingly – that "by definition, it is the masking policy itself which leads to disability, and which would evaporate with the termination of the policy or exemption to it." Compl. 107. In making this allegation, Plaintiff implicitly acknowledges that the "impairment" he experiences is transitory, which undercuts his claimed disability. See Parks v. Port of Oakland, 2017 WL 2840704, at *4 (N.D. Cal. July 3, 2017) (stating that in determining whether an impairment "substantially limits" a major life activity, courts should take into account "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impacted ...").

"legitimate safety requirements" based upon actual, documented risks and recognized safety precautions associated with the COVID-19 pandemic, which were necessary to ensure the safety of attendees of a public show which presented an increased risk of transmission of infectious diseases. *See* 28 C.F.R. § 35.130(h) (stating that a public entity "may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities"). Because Plaintiff cannot allege any <u>reasonable</u> accommodations that he was denied on the basis of his supposed disability, his ADA and public accommodation claims fail.

C.      **Plaintiff Is Not A "Qualified" Individual with a Disability**

Even if Plaintiff were "disabled" under the ADA, he is not "qualified for accommodations under the ADA" because he "poses a direct threat to the health or safety of others." *See* 28 CFR § 35.139(a) (2014) (stating that a public entity is not required to "permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others."). By declining to wear a mask to public events during a pandemic, without COVID-19 vaccinations, Plaintiff is at an increased risk of transmitting COVID-19 and poses a threat to the safety of other attendees of The Wang Center's shows. Therefore, it was not a violation of the ADA for The Wang Center to preclude Plaintiff from attending The Wang Center Shows without a mask or COVID-19 vaccination because Plaintiff was not a "qualified" individual with a disability. *See Together Employees v. Mass. Gen'l Brigham, Inc.,* 2021 WL 5234394, at *7 (D. Mass. Nov. 10, 2021) (holding that employees were not "qualified individuals" and therefore were not entitled to relief under the ADA where they posed a "direct threat" to the health or safety of others in the workplace by refusing COVID-19 vaccinations).

VI.     **COUNT VII FAILS TO STATE A CLAIM FOR G.L. C. 272 §§ 92A AND 98 VIOLATIONS**

Plaintiff's claimed violations of the public accommodation statutes (G.L. c. 272 §§ 92A and 98) should be dismissed because he has brought this suit prematurely and, as discussed in Section V, he has not alleged that he has a cognizable disability or requested and was denied a reasonable accommodation.

First, Plaintiff's G.L. c. 272 §§ 92A, 98 claim is premature because he has not exhausted his administrative remedies prior to filing.  "[T]he [Massachusetts Commission Against Discrimination] has been

given broad jurisdiction to administer and effectuate the provisions of anti-discrimination statutes of the Commonwealth, including G.L. c. 272, §§ 92A and 98." *E. Chop Tennis Club v. Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 446 (1973). In particular, certain administrative processes are available to persons "claiming to be aggrieved by an -alleged unlawful practice or alleged violation of … sections ninety-two A, [or] ninety-eight." G.L. c. 151B, § 5. "[A] plaintiff must pursue the opportunities available for administrative relief before seeking relief from the court." *E. Chop Tennis Club*, 364 Mass. at 453 (1973).[25] Because Plaintiff has not fully exhausted his administrative remedies with the commission prior to filing suit, his claim is necessarily premature and should be dismissed. *See E. Chop Tennis Club*, 364 Mass. at 453 (1973) (holding that it was "unnecessary to consider the merits of the [plaintiff's complaint]" where "[t]he club acted prematurely in bringing [its] suit for declaratory relief before exhausting its administrative remedies."); *McKenney v. Comm'n on Jud. Conduct*, 380 Mass. 263, 266–67 (1980) ("[T]he requirement that a party exhaust his administrative remedies prior to seeking judicial relief reflects 'a sound principle of law and jurisprudence aimed at preserving the integrity of both administrative and judicial processes.'").

Second, Plaintiff's claim fails because he alleges no cognizable disability. "The public accommodation statutes, G.L. c. 272, §§ 92A and 98, prohibit discrimination on the basis of [disability], among other factors, in relation to the admission of or treatment of any person in a place of public accommodation." *Donaldson v. Farrakhan*, 436 Mass. 94, 97 (2002). In interpreting what qualifies as a "disability," Massachusetts courts look to the ADA. *See Nathanson v. MCAD*, No. 199901657, 2003 WL 22480688, at *4 (Mass. Super. Sept. 16, 2003) (the ADA is a statute with "objectives similar" to the public accommodation statutes and "[i]t is thus appropriate to look to the ADA, and decisions interpreting it, for guidance when interpreting the provisions of the Massachusetts Public Accommodation statute."). Thus, Plaintiff's failure to adequately allege that he had

---

[25] Some courts have taken the contrary position that it is unnecessary for plaintiffs to fully exhaust their administrative remedies prior to bringing claims alleging public accommodations violations. *See Peters v. Bos. Properties, Inc.*, No. 2084CV02447, 2021 WL 3493907, at *3 (Mass. Super. June 15, 2021) (collecting cases). However, in *Peters*, as in other cases in which the court opined that prior exhaustion of administrative remedies was not a bar to a plaintiff's claims, the plaintiff did in fact proceed with some administrative process prior to bringing a civil suit. In *Peters*, for example, although the plaintiff failed to file a prior MCAD charge of discrimination against some of the defendants, plaintiff had filed a verified charge as to other defendants which resulted in MCAD issuing a finding of probable cause against them. *Id.* Thus – unlike here – MCAD had already served its gating function and deemed plaintiff's civil rights claim legitimate, at least in part.

a cognizable disability under the ADA (and his failure to allege that he was denied any reasonable accommodation, as outlined in Section V) is fatal to his public accommodation statutes claim.

## VII.   COUNT VIII'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS

"To state a claim for negligent infliction of emotional distress ["NIED"] in Massachusetts, plaintiffs must plead that they suffered physical harm." *Nasir v. Foxborough*, 2020 WL 1027780, at \*5 (D. Mass. Mar. 3, 2020). This requires pointing to a "physical harm" that was suffered "as a result of the conduct which caused the emotional distress." *See Payton v. Abbot Labs*, 386 Mass. 540, 556 (1982).

Plaintiff's Complaint does not allege that Mr. Bush experienced physical harm as a result of the emotional distress he allegedly suffered. Instead, Plaintiff alleges only that he suffered "severe anxiety, sadness, humiliation, and despair" as a result of being unable to attend The Wang Center Shows. Compl. ¶ 59. This failure to allege physical harm is fatal to Plaintiff's NIED claim. *See Doe v. Emerson Coll*., 153 F. Supp. 3d 506, 517 (D. Mass. 2015) (dismissing emotional distress claim where "complaint allege[d] that the defendants' negligence caused her 'pain and suffering' without any description or explanation of how that emotional distress has manifested in physical symptoms").

## VIII.   COUNT IX FOR VIOLATION OF 42 USC § 1983 AND 18 U.S.C. § 242 SHOULD BE DIMSISSED

### A.   Plaintiff Fails to Allege a Valid Claim Under 42 U.S.C. § 1983

"[A] plaintiff claiming a § 1983 violation must allege that a person or persons acting under color of state law deprived him of a federal constitutional or statutory right." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005). "If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal." *Id*. In this case, Mr. Bush fails to meet either of these two prerequisites for a valid 42 U.S.C. § 1983 claim, warranting dismissal of his claim.

#### 1.   The Wang Center is Not a Government Entity Subject to the Statute

For a defendant to have acted under color of state law, its actions must be "fairly attributable to the State," meaning "it must be fair to characterize them as state actors." *Id.* "The First Circuit looks to three tests

to determine if 'a private party fairly can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test.'" *Manning v. Whole Foods Mkt. Grp., Inc.*, No. 21-cv-10833-ADB, 2022 WL 194999, at *4 (D. Mass. Jan. 21, 2022). "It is '[o]nly in rare circumstances' that private parties can be viewed as state actors." *Estades-Negroni*, 412 F.3d at 4 (citations omitted).

Here, Plaintiff has failed to allege facts sufficient to show that The Wang Center could be considered a state actor under any of the First Circuit's tests. For the state compulsion test, "a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" *Estades-Negroni*, 412 F.3d at 5 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Although Plaintiff alleges that The Wang Center's COVID-19 safety policies were prompted, in part, by Boston Public Health Commission's Order Requiring Face Coverings in the City of Boston and Boston Mayor Wu's proof of COVID-19 vaccination procedure, this is insufficient to render The Wang Center a "state actor" because Plaintiff "is not challenging the Massachusetts mask [or vaccination] mandate[s] [themselves] and he has not alleged any facts to show that Massachusetts coerced [The Wang Center] into implementing or enforcing their own Mask [or vaccination] Policy." *Manning*, 2022 WL 194999, at *4-5 (dismissing Section 1983 claim brought against Whole Foods based on Whole Foods' policy requiring customers to wear a mask while shopping in its stores, and finding Whole Foods was not a "state actor").

Similarly, because Plaintiff fails to allege that the government was a "joint actor in [The Wang Center's] decision to implement and enforce the Mask [and vaccine] Polic[ies]," The Wang Center does not qualify as a state actor under the nexus/joint action test. *Id.* at *4; *see also Estades-Negroni*, 412 F.3d at 5 ("[t]he nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'") (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999)).

The Wang Center also cannot be deemed a state actor under the public function test. "[A] private party

is viewed as a state actor [under the public function test] if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" *Estades-Negroni*, 412 F.3d at 5. "The public function test 'is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities.'" *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 544 (1st Cir. 2021) (quoting *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18-19 (1st Cir. 1999)). A private party's mere enforcement and implementation of its own "internal policies" to protect the health and safety of patrons and staff members does not suffice to establish that the private party was "performing a public function." *See Manning*, 2022 WL 194999, at *5 (holding that Whole Foods was not a state actor where it "implemented and, through its employees, enforced a store policy to protect the health and safety of its customers and staff."). Because Plaintiff has not alleged any public function performed by The Wang Center beyond what would be considered enforcement of The Wang Center's own internal policies, The Wang Center cannot be deemed a "state actor."

    **2.**    **The Wang Center Did Not Violate Plaintiff's Constitutional or Federal Statutory Rights**

Even if Plaintiff's claim were not barred based on the lack of state action, his Section 1983 claim would still fail because Plaintiff has not adequately alleged that The Wang Center's conduct "violated his constitutional or federal statutory rights." *Miller v. Town of Wenham Massachusetts*, 833 F.3d 46, 51 (1st Cir. 2016) (citing *Chongris v. Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir. 1987)). The two statutory bases for Plaintiff's claim are purported violations of G.L. c. 272 § 92A and the ADA. As discussed in Section V and VI, *supra*, because Plaintiff does not adequately allege violations of either statute.

**B.**    **There is No Private Cause of Action Under 18 U.S.C. § 242**

Finally, 18 U.S.C. § 242 "does not provide a private right of action and cannot be used in a civil action." *Bey v. Att'y Gen. of Massachusetts*, No. 21-11508-ADB, 2021 WL 4926164, at *3 (D. Mass. Oct. 21, 2021); *see Manning*, 2022 WL 194999, at *5 (dismissing individual Plaintiff's Section 242 claim).

## CONCLUSION

For the foregoing reasons, Defendant asks that the Court dismiss Plaintiff's claims with prejudice.

Dated:  May 3, 2022                           Respectfully submitted,

The Wang Center for the Performing Arts, Inc.
d/b/a Boch Center

By its attorneys,

/s/ *Bruce E. Falby*
Bruce E. Falby (BBO No. 544143)
Kelsey Tavares (BBO No. 705934)
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (facsimile)
bruce.falby@us.dlapiper.com
kelsey.tavares@us.dlapiper.com

*Counsel for Defendant*

## REQUEST FOR ORAL ARGUMENT

Given the dispositive nature of the motion and the issue of law presented throughout the Memorandum, The Wang Center hereby respectfully requests oral argument on the present motion pursuant to Local Rule 7.1(d) of the U.S. District Court for the District of Massachusetts.

## LOCAL RULE 7.1 STATEMENT

Pursuant to Rule 7.1(a)(2) of the Local Rules of the United States District Court for the District of Massachusetts, counsel for Defendant certifies that they contacted counsel for Plaintiff in an attempt to confer on the issues addressed by this Motion on May 3, 2022. During that call, the parties engaged in a good-faith effort to resolve or narrow the issues raised by this motion; however, they were unable to do so.

/s/ *Bruce E. Falby*
Bruce E. Falby

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been furnished this 3rd day of May,

2022 via the Court's ECF system to:

Richard C. Chambers, Jr., Esq.
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940

*Counsel for Plaintiff*

/s/ *Bruce E. Falby*
Bruce E. Falby