# Memorandum

## I.     The Defendant's motion is defective

The Defendant's memorandum of reasons supporting its motion exceeds the limit set by Local R. Civ. P. 7.1(b)(4), which states simply and clearly that, "Memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed 20 pages, double-spaced." With the cover page, certification, and other peripheral text subtracted, the body of the Defendant's memorandum still totals 20 pages, but much of it is not double-spaced as Local R. Civ. P. 7.1(b)(4) requires. Instead, the Defendant crammed in 25 single-spaced footnotes *in small font.* Those 25 footnotes encompass over 1,700 words. Were those footnotes to have been presented in normal-sized font and double-spaced, they would span over six pages (as revealed by enclosed Exhibit 1).

Whereas the Defendant's motion to dismiss for failure to state a claim eligible for relief is defective, it must be summarily denied.

If, however, this Court concludes the Defendant has in fact met the requirements of Local R. Civ. P. 7.1(b)(4), then the following sections apply.

## II.     Standard of Review

When deciding a motion to dismiss under Rule 12(b)(6), a court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Tomasella v. Nestle USA, Inc.,* 962 F.3d 60, 70 (1st Cir. 2020).

"A judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)." *Forbes v. Cnty. of San Diego*, Case No. 20-cv-00998-BAS-JLB, 4 (S.D. Cal. Mar. 4, 2021)

## III.   Impertinent and prejudicial material in the memorandum

As Fed. R. Civ. P. Rule 12(d) states, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

The Defendant points out in its very first sentence of its memorandum that the Plaintiff in this case is a Plaintiff in two other cases active in this Court. The Defendant goes further and mischaracterizes the Plaintiff's other cases, apparently seeking to paint the Plaintiff in a negative light. These assertions by the Defendant about the Plaintiff are, of course, utterly impertinent and prejudicial in a motion to dismiss. Furthermore, as the Plaintiff represents himself pro se and has been filing documents electronically with this Court for quite some time in one of those other

cases, the Defendant has (perhaps inadvertently) thereby supported the Plaintiff's pending

motion for his legal counsel to withdraw from this case.

If this Court now decides to exclude that and any other matters outside the Plaintiff's

Complaint that the Defendant mentioned in its Motion, then the following sections apply. If this

Court has instead decided not to exclude such matters, then per Fed. R. Civ. P. 12(d), the

Defendant's motion must be treated "as one for summary judgment."

## IV.   The terms and conditions cannot be unlawful

The Defendant wrote much about the "terms and conditions" under which it sold tickets

to the Plaintiff and it subsequently failed to honor. For the Court's convenience, let's boil the

Defendant's argument down to its essence: The Defendant asserts that it is not "responsible or

liable" to ticket purchasers such as the Plaintiff and that waiver of liability is part and parcel of

the Defendant's and the Plaintiff's contract. But as the Plaintiff established in his complaint, the

Defendant violated his civil rights. And no contract can require a participant to waive their

constitutional or civil rights. Thus, the Defendant's argument that its "terms and conditions"

authorize it to violate ticketholders' rights without liability or consequence is void.

## V.   The complaint *does* state breaches of contract and the covenant of good faith and fair dealing

In his complaint the Plaintiff asserted that the medical requirements the Defendant

imposed on him after his purchase of tickets were not present and were not communicated to him

by the Defendant at the time of his tickets purchase. Complaint ¶¶ 5-8, 10-13, 15, 16. Yet in its

motion the Defendant denies these facts. On page 7 of its memorandum the Defendant also

mischaracterizes the Plaintiff's inability to meet the Defendant's medical requirements as a

"refusal to comply". Would a dark-skinned customer declining to change his skin color to

"comply" with a theater's requirement that customers be "Caucasian" constitute a "refusal"? Would it be a "refusal to comply" if a ticketholder allergic to peanuts declined to eat a peanut butter and jelly sandwich as part of the theatrical performance they paid to attend? The Defendant's denial and misrepresentation of the facts in the Plaintiff's complaint constitute significant factual disputes which require the Defendant's motion be denied.

The Defendant mischaracterizes the Plaintiff's complaint and suit as being about the Plaintiff expecting that the Defendant would impose no COVID-19 safety policies after his purchase of his tickets. What the Plaintiff actually states in his Complaint, however, is that he expected the terms of his contract would be honored and that any new policies/procedures imposed would honor rather than violate his civil rights. Complaint ¶¶ 7, 8, 11-13, 15, 16. Additionally, the Defendant asserts in its motion that the "Plaintiff has not alleged any dishonesty or bad faith" on its part. It leaves one wondering if the Defendant even read the Complaint, as the Plaintiff did indeed allege dishonesty and bad faith on the Defendant's part in ¶¶ 6, 7, 10-13, 15-17, 24-30, 31-45, 49-55, 64-69, and 77-79. Thus, we have a great deal more significant factual disputes that require the Defendant's motion be denied.

The Defendant also made the argument that it is not a breach of contract if the Defendant takes a customer's tickets away because the tickets are a "revocable license"—regardless of whether their policy or practice violates civil rights laws. Would the Defendant be making this same argument if it took the Plaintiff's tickets away based on his race or sex?

The Defendant cited the *Godines v. EF Explore Am., Inc.* case in which that case's defendant cancelled the plaintiff's trip along with that of all other customers on that same trip. That case is of a different nature than this case. In this case the issue is not that the Defendant cancelled the show(s) the Plaintiff paid to attend but rather that the Defendant barred the Plaintiff

from attending those show(s), in violation of his civil rights. Furthermore, in its Memorandum

Of Decision in the *Godines* case, that court noted, "'Every contract implies good faith and fair

dealing between the parties to it.' A party may not conduct itself in a way 'that will have the

effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"

<u>Gloucester Landing Assocs. Ltd. P'ship v. Gloucester Redevelopment Auth.</u>, 60 Mass. App. Ct.

403, 413 (2004), quoting <u>Anthony's Pier Four, Inc. v. HBC Assocs.</u> 411 Mass. 451, 471-472

(1991) (citations omitted). In this case, the Defendant in fact conducted itself in a way that

destroyed and/or injured the right of the Plaintiff to receive the fruits of the contract. Complaint

¶¶ 11-13, 15, 16, 20-23, 49-55, 69, and 73.

As the Defendant raised a slew of significant factual disputes in its motion to dismiss, its

motion must be denied. If, however, this Court concludes that the Defendant did not raise

significant factual disputes, then the following sections apply.

## VI. The complaint *does* allege facts supporting the Misrepresentation claim

In ¶¶ 4-7 and 10-11 of the Complaint, the Plaintiff asserts facts and presents exhibits

from which the Court can plausibly infer that at the time the Plaintiff purchased tickets, the

Defendant intended to later impose various specific medical requirements on its customers (upon

the FDA's approval of a "COVID-19 vaccine"); and the Defendant could have disclosed its

intention and expectation to prospective customers including the Plaintiff but instead failed to

disclose that information to the Plaintiff in the purchase process.

In ¶¶ 13 and 15-16 of the Complaint, the Plaintiff established that the Defendant

misrepresented the Boston Public Health Commission's Order as requiring the Defendant to

implement the Defendant's unlawfully discriminatory policy.

In ¶¶ 24-32 and 34-43 of the Complaint, the Plaintiff established that the Defendant made claims it had reason to know were false and/or misleading about medical products and devices.

## VII.   The Defendant's arguments about the Plaintiff's M.G.L. Ch. 93A claim are invalid

The Defendant cites the *Moran v. Stonehill Coll. Inc.* case to argue that the Plaintiff's claim under the Massachusetts Consumer Protection Law in this case should be dismissed. The Defendant claims that case was dismissed, yet in fact that case's two motions to dismiss were denied and the case remains live. (See Exhibit 2 enclosed.) Additionally, according to this Defendant, that other case had to do with the reimbursement of certain charges but not others. Yet that is not what this case is about.

The other case the Defendant cites regarding this particular claim (*Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co.*) is irrelevant, as it was not a case involving a claim under M.G.L. Chapter 93A as the Plaintiff in this case has brought.

M.G.L. Ch. 93A § 2 declares unlawful "…unfair or deceptive acts or practices in the conduct of any trade or commerce." The Plaintiff established the Defendant's acts and/or practices that are unfair and/or deceptive in ¶¶ 4-7, 11-13, 15-23, 29, 30, 40-45, 49-59, 64-69, and 73 and their attendant exhibits of the Complaint.

## VIII.   <u>The Plaintiff sufficiently pled claims pursuant to the ADA and Massachusetts Public Accommodations statutes</u>

The Defendant asserts that the Plaintiff has no "cognizable disability". The Defendant also asserts that when interpreting the provisions of the Massachusetts Public Accommodations statutes pursuant to which the Plaintiff makes claims, it is appropriate to look at the Americans with Disabilities Act ("ADA") and decisions interpreting it. OK, let's do that.

According to Fed. R. Civ. P. 8(a), the Plaintiff's complaint sufficiently asserts violation of the ADA and 42 U.S.C. §1983 if it alleges the following:

1. The Plaintiff has a disability recognized by the ADA

2. The Defendant created a policy which denied accommodation to the Plaintiff

3. The Defendant denied reasonable accommodation

4. The Defendant then discriminated against the Plaintiff on that basis

The Defendant impliedly and erroneously asserts that a disability is defined under the ADA only as "a physical or mental impairment that substantially limits one or more major life activities." That is merely 42 U.S.C. § 12102(1)(A)'s definition. Another definition of a disability the ADA covers is in § 12102(1)(C): "being regarded as having such an impairment (as described in paragraph (3))." Paragraph 3 then clarifies that "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment **whether or not the impairment limits or is perceived to limit a major life activity**." (Emphasis added.) 42 U.S.C. § 12102(4)(A) tells us that, "The definition of disability in this chapter shall be construed **in favor of broad coverage of individuals** under this chapter, **to the maximum extent permitted** by the terms of this chapter." (Emphases added.)

In this case, the first of the numbered prongs *supra* is satisfied by Complaint ¶ 12 with its attendant exhibit 3. Exhibit 3 consists of a letter from Plaintiff's physician identifying the disability. "I have found him to have contraindications to mask wearing for a private medical condition…" The Defendant asserted without substantiation in its 24th footnote that the Plaintiff's impairment is transitory. There is nothing about the Plaintiff's impairment that is

transitory, nor does his physician's letter state that. And 28 CFR 36.105(f)(2) clarifies that, "A public accommodation may not defeat 'regarded as' coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the public accommodation must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment), objectively, both 'transitory' and 'minor.'" Further, what was indeed "transitory" was the Defendant's unlawfully discriminatory policy, which the Defendant lifted after this lawsuit was filed and the Defendant had already harmed the Plaintiff. The Plaintiff has pled disability within the meaning of the ADA and even provided documentation of it (which is more than the ADA requires), notwithstanding the Defendant's erroneous argument in its motion. And as 28 CFR § 36.101(b) advises, "The primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of 'disability.' The question of whether an individual meets the definition of 'disability' under this part should not demand extensive analysis."

The second prong is established by Complaint ¶ 11 and its attendant exhibit 2, the Defendant's policy, which bars the Plaintiff from its place of public accommodation based on his disability.

The third and fourth prongs are established by Complaint ¶¶ 15-16, 49, 50, and 53-58 and their attendant exhibits 9, 10, and 11. Accommodation in this case is actually defined by the city's order. The accommodation which the Defendant was obligated to offer was outright exemption, per ¶¶ 13 and 15. The Complaint established that the Defendant failed to provide accommodation and discriminated against the Plaintiff on the basis of his disability,

notwithstanding the Defendant's argument. The absurdity and inhumanity of the Defendant's refusal to provide accommodation to the Plaintiff in accordance with the ADA and the city's order is revealed by Complaint ¶¶ 15-23, 32, 34-35, 41-43, 46-55, 62-63, 65-66, and 69-70.

The Defendant asserted that in his September 16, 2021 Demand Letter (the Complaint's Exhibit 9) the Plaintiff demanded the Defendant rescind its policy. He had good reason to demand that, as the policy was unlawful. In fact, as established in Complaint ¶ 53 and its attendant exhibit 11, the Plaintiff subsequently offered to assist the Defendant to create a policy that would be honest, ethical, and lawful. And as established by Complaint ¶¶ 54 and 55, the Defendant has never responded to the Plaintiff's letter or offer.

Contradicting the Plaintiff's Complaint ¶¶ 62 and 63, in its motion the Defendant now accuses the Plaintiff of posing a direct threat. As this Court surely knows, if the Defendant wishes to contradict facts in the Complaint, it will have to do so in an answer to the complaint, not in a motion to dismiss. And as 28 CFR 36.208(b) tells us, "In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment…" The Defendant fails to allege that it conducted an individualized assessment to accuse the Plaintiff of posing a direct threat. Again, were the Defendant to make such an allegation, it must do so in an answer to the complaint, not in a motion to dismiss.

Yet the Defendant didn't stop there. The Defendant went on its motion to assert that, "By declining to wear a mask to public events during a pandemic, without COVID-19 vaccinations, Plaintiff is at an increased risk of transmitting COVID-19 and poses a threat to the safety of other attendees of The Wang Center's shows." This accusation conspicuously contradicts the

Complaint ¶¶ 20-23, 32, 34, 35, 37, 41, 42 (and its exhibit 7), 43, and 46-48. By once again raising significant factual disputes, the Defendant has necessitated denial of its motion.

Moreover, the Defendant's acts specified in the Complaint's ¶¶ 49-59 and their attendant exhibits plausibly constitute the sort of threats and retaliation in connection with the ADA that 28 CFR 36.206 prohibits. For this Court's convenience a copy of 28 CFR 36.206 is enclosed as <u>Exhibit 4.</u>

The Plaintiff did exhaust administrative remedies

The Defendant cited a bunch of case law regarding administrative remedies and asserted that the Plaintiff has not met his purported obligations in that regard—without even knowing whether the Plaintiff has pursued administrative remedies. In fact, the Plaintiff did file a report months ago with the Department of Justice's Civil Rights Division regarding the Defendant's unlawful practices. The Department of Justice has not acted or followed up on the Plaintiff's report. The Plaintiff is not required to put such information in his Complaint. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As for the Massachusetts Commission Against Discrimination the Defendant mentions, when the Plaintiff attempted to file a complaint with that agency against this Defendant, he was required to first make an appointment for an intake interview. The only opportunity over the next 12 months or more for such an interview the agency gave the Plaintiff was a single day several months away, which was not feasible for the Plaintiff. Thus, the tiniest of windows the agency

offered the Plaintiff made filing a complaint impracticable for the Plaintiff—an anecdote more suitable for a dystopian or comical novel than a present-day civil rights agency.

The Complaint and its exhibits thereby satisfy the requirements to plausibly assert the Defendant violated the ADA and its associated MA statutes, which precludes dismissal of those claims.

## IX   The Plaintiff cannot assert physical harm from the emotional distress

The Complaint established that the Defendant did negligently inflict emotional distress upon the Plaintiff. But according to the case law the Defendant cited, physical harm from the emotional distress must have occurred for such a claim to succeed. The Plaintiff cannot point to particular physical harm he incurred. Thus, the Plaintiff concurs with the Defendant that this Court should dismiss the Plaintiff's claim for negligent infliction of emotional distress.

## X.   The 42 U.S.C. § 1983 claim holds up. The 18 U.S.C. § 242 claim does not

First, the Plaintiff concurs with the Defendant's assertion that there is no private right of civil action under 18 U.S.C. § 242. Thus, this Court should dismiss that claim.

As for the 42 U.S.C. § 1983 claim, the Defendant asserts that the Plaintiff failed to allege violation of a constitutional or federal statutory right. Actually, the ADA is a federal statutory civil right. And as detailed *supra*, the Plaintiff plausibly alleged in the Complaint and its exhibits that the Defendant violated the ADA.

The Defendant quotes considerably from the *Manning v. Whole Foods Mkt. Grp. Inc.* case. That Court's Memorandum & Order Granting Defendants' Motion To Dismiss (enclosed as Exhibit 3) in that case was seriously flawed from both factual and legal perspectives. In its unorthodox footnote number 5 on page 16, that Court briefly dabbled in public health punditry

and made assertions that had been debunked before that Court issued its Order—as established by this Complaint ¶¶ 27, 28, 32, 34-37, 42, 44, 46-48, and 64-66 with their attendant exhibits (which this Court must accept as true). Incredibly, that Court also asserted in its footnote that there is no constitutional, statutory, or common law right to shop in a store without a mask during a pandemic. Not only may qualified persons assert that right pursuant to the 1st amendment to the U.S. Constitution and/or the ADA, they may do so pursuant to the very Civil Rights Act that Court quoted on page 10 of its Order. That Court's aberrant instruction to the Plaintiff in its footnote on page 16 that his options were "to get your food delivered... [or] have someone else shop for you" blatantly violates Title II's guarantee that all persons are entitled to the full and equal enjoyment of and access to any place of public accommodation without discrimination or segregation on the ground of religion [as that case's plaintiff asserted]—and which statute that Court itself quoted on page 10 of its same Order. Thankfully, other Courts have understood this and upheld plaintiffs' constitutional and civil rights: "The Navy servicemembers in this case seek to vindicate the very freedoms they have sacrificed so much to protect. The COVID-19 pandemic provides the government no license to abrogate those freedoms. There is no COVID-19 exception to the First Amendment." *U.S. NAVY SEALs 1-26, et al., v. JOSEPH R. BIDEN, JR.*, et al., 4:21-cv-01236-O (N.D. Tex. Jan. 3, 2022) "'[E]ven in a pandemic, the Constitution cannot be put away and forgotten.' Roman Cath. Diocese , 141 S. Ct. at 68. Thus, as both the Supreme Court and our court have agreed: Even in a case with such vital interests on each side, the balance of harms and the public interest require us to enjoin the State's unconstitutional practices. Indeed, neither court appears to have had much difficulty reaching such a conclusion. See id. at 67–68 ; Calvary Chapel , 982 F.3d at 1234." *Harvest Rock Church, Inc. v. Newsom,* 985 F.3d 771, 774 (9th Cir. 2021)

The Defendant also asserts that the Plaintiff failed to allege facts sufficient to show that the Defendant was a state actor per 42 U.S.C. § 1983. Yet the Plaintiff clearly did allege in Complaint ¶¶ 11, 13 (and its attendant exhibit 4), and 71-73 (and ¶ 72's attendant exhibit 14) that the Defendant was a state actor according to the close nexus test. In the Defendant's statements revealed in the Complaint's allegations and attendant exhibits, the Defendant explicitly stated their policies this lawsuit challenges were driven by government orders. This satisfies the criteria of coercion and/or encouragement by the government. "A State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 992 (1982) Only now, in its motion to dismiss, does the Defendant claim its challenged policies were not prompted by the government. And as noted *supra*, when deciding a motion to dismiss under Rule 12(b)(6), a court must "construe all factual allegations in the light most favorable to the non-moving party…"

Again, the Defendant cited the *Manning* case and its aberrant Order to assert that the Defendant's challenged conduct having been prompted by the government's orders is not sufficient to render the Defendant a "state actor" because the Plaintiff is not challenging the government's orders. That is false. The Plaintiff challenges those orders in Complaint ¶¶ 14, 74, and 75.


## Summary & Conclusion

1. The Defendant's motion does not meet Local R. Civ. P. 7.1(b)(4)'s requirements, is therefore defective, and thus should be summarily denied. If, however, this Court concludes that rule's requirements were fulfilled, then:

2.  The Defendant has raised extensive significant factual disputes which necessitate denial of the Defendant's motion. If, however, this Court concludes the Defendant did not raise significant factual disputes, then:

3.  The matters the Defendant raised that were "outside the pleadings" must either be excluded by the court or the motion must be treated as one for summary judgment under Rule 56. If, however, this Court concludes no matters "outside the pleadings" were raised by the Defendant, then:

4.  The Defendant's motion should be allowed in part to dismiss: 1) the Plaintiff's claim for negligent infliction of emotional distress, 2) his claim pursuant to 18 U.S.C. § 242, and

5.  The Defendant's motion should be otherwise denied.

Respectfully submitted,
Michael Bush,
By his Attorney,

Date:   5/16/22

*/s/ Richard C. Chambers, Jr., Esq.*

Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Richard@chamberslawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

DATED: 5/16/22

/s/ Richard C. Chambers, Jr.,
Richard C. Chambers, Jr., Esq.