1 *See Michael Bush v. Acton-Boxborough Regional School District, et al.*, Case No. 1:21-cv-12039-IT (D. Mass. 2021); *Michael Bush, et al. v. Linda Fantasia, et al.*, Case No. 1:21-cv-11794-ADB (D. Mass. 2021).

2 Defendant refers herein to Plaintiff's First Amended Complaint as "Complaint" and "Compl."

3 Mr. Szczewpkowski is the Vice President and General Manager of The Wang Center. *See* Affidavit of Michael Szczewpkowski. This Court may consider the tickets for The Wang Center Shows because the "authenticity" of the tickets is not disputable the tickets are "central to plaintiffs' claim[s]," and the tickets are "sufficiently referred to in the complaint." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71–72, 74 (1st Cir. 2014); *see also In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 146 (D. Mass. 2001) ("In evaluating a motion to dismiss, the Court may consider documents pertinent to the action or referenced in the complaint.").

4 The Terms currently available on Ticketmaster's website state that they were "[l]ast [u]pdated: July 2, 2021," before Mr. Bush purchased tickets for The Wang Center Shows on July 11, and July 25, 2021. *See* Ticketmaster Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US. Therefore, this is the version of the Terms that applies to Mr. Bush's claims. *See Bagg v. HighBeam Rsch., Inc.*, 862 F. Supp. 2d 41, 44 (D. Mass. 2012) (examining only the operative agreement that existed "at the time" of the events at issue on a motion to dismiss); *Lowell Sch. Comm. v. United Teachers of Lowell*, 12 Mass. L. Rep. 672 n.1 (2001) (evaluating only the relevant "language" that was "contained in the version of the agreement in effect at the time" that the "disputes presented").

[5] *See* Ticketmaster Purchase Policy, available at https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US, last updated January 1, 2021, before Mr. Bush purchased tickets for The Wang Center Shows on July 11 and July 25, 2021.

[6] *See* Terms ("Our Privacy Policy, Purchase Policy, and any other policies, rules, or guidelines that may be applicable to particular offers or features on the Site are also incorporated into the Terms."); Ticketmaster Purchase Policy, available at https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US.

[7] *See* Ticketmaster Purchase Policy, available at https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US .

[8] This text is available on both Ticketmaster's current Event-Safety webpage, and on the version of the webpage in effect on March 31, 2021, prior to Mr. Bush's ticket purchases in July of 2021. The March 31, 2021 version of the Event-Safety Webpage may be accessed through archive.org at https://web.archive.org/web/20210331155332/www.ticketmaster.com/event-safety. It is appropriate to take judicial notice of materials from archive.org, especially when – as is the case here – the validity of such materials cannot reasonably be called into question. *See Walsh v. Teltech Sys., Inc.*, No. 13-13064-RWZ, 2015 WL 12856456, at *2 (D. Mass. July 30, 2015), aff'd, 821 F.3d 155 (1st Cir. 2016).

[9] *See also Richmond v. Wells Fargo Bank, N.A.*, No. 12-10011-RWZ, 2012 WL 3627644, at *1 (D. Mass. Aug. 22, 2012) (allowing motion to dismiss breach of contract claim where plaintiff failed to "identify any agreement with defendant that obligate[d] defendant to modify their mortgage loan, much less the terms of such agreement that were breached").

[11] Because all of the claims brought by Plaintiff in this action relate to his ticket purchases, Plaintiff's other tort and statutory claims should also be precluded by operation of the release and waiver in the Terms.

[12] *See Doe v. Cultural Care, Inc.*, 2011 WL 1048624, at *5 (D. Mass. Mar. 17, 2011) ("It is a rule in this Commonwealth that the failure to read or to understand the contents of a release, in the absence of fraud or duress, does not avoid its effects.") (quotes and citation omitted); *Sharon v. City of Newton*, 437 Mass. 99, 105 (2002) (by signing a release, plaintiff and her father were deemed to have "understood it" despite plaintiff's claim that she did not realize that by signing the release she was waiving future claims).

[13] *See* Compl. ¶¶ 84-86 (stating only that "[b]y its conduct, Boch Center breached the covenant of good faith and fair dealing" and "[a]s a direct and proximate result of Boch Center's failure to exercise good faith and fair dealing, Mr. Bush has been damaged."); *Saxena v. Univ. of Massachusetts Med. Sch.*, 442 F. Supp. 3d 395, 404 (D. Mass. 2020) (dismissing complaint where plaintiff's allegations in support of his claims were "based on legal conclusions").

[14] *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013) (stating that a plaintiff must "present evidence of bad faith or an absence of good faith" to adequately plead an implied covenant claim which "carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.").

[15] *See Stamos v. Verdasys, Inc.*, No. CIV.A. 12-622-BLS1, 2013 WL 4008178, at *8 (Mass. Super. May 22, 2013) (dismissing plaintiff's implied covenant claim where plaintiff "could not plausibly claim that the motive behind [the defendant's actions was a] desire to cheat him out of

the stock he was entitled to"); *Tactician Corp. v. Subway Int'l, Inc.*, No. CV 21-10973-JGD, 2021 WL 5640695, at *4 (D. Mass. Dec. 1, 2021) (dismissing implied covenant claim and explaining that the court must distinguish the complaint's factual allegations "from its conclusory legal allegations (which need not be credited).") (citation omitted).

16 *Kruskall v. Sallie Mae Serv., Inc.*, No. 15-cv-11780, 2016 WL 1056973, at *6 (D. Mass. Mar. 14, 2016) (dismissing Plaintiff's claim where plaintiff's "allegations regarding misrepresentations [we]re exceedingly sparse" and "[e]ven putting aside the requirements of Rule 9(b) as to any claim of negligent misrepresentation, [plaintiff] still d[id] not adequately allege a particular false statement of material fact as to []his claim."); *see also Rogers v. Nstar Elec.*, 389 F. Supp. 2d 100, 110 (D. Mass. 2005) (allowing motion to dismiss where plaintiff did not allege a specific material misrepresentation).

17 *See* Compl. ¶ 6 ("[n]owhere in the Boch Center's promotional emails or the online purchase process was it disclosed to Bush that he would have to undergo 'vaccination(s)', medical test(s) and/or wear a mask in order to attend the shows").

18 *See also Buckley v. Goldman, Sachs & Co.*, No. CIV.A.02-CV-11497RGS, 2005 WL 1206865, at *9 (D. Mass. May 20, 2005) (dismissing fraud claim based on "misrepresentation by omission" as to "predictive statements" about the market environment); *Hallmark Inst. of Photography, Inc.*, 518 F. Supp. 2d at 332 (D. Mass. 2007) (dismissing misrepresentation claim since "Defendant simply could not have known when it made its prediction ... what the results ... would actually be" and there was no allegation that defendant "knew, or even could have known, that its prediction was untrue when it made the statement"); *4 MVR, LLC*, 2013 WL 310290, at

*5 (dismissing misrepresentation claim where plaintiff did not plausibly allege that the statements were false when made).

19 Plaintiff's reliance on any such omission or representation is also contradicted by Ticketmaster's website which expressly informs customers that each venue may impose their own COVID-19 policies, including face mask mandates. Therefore, his reliance on any "misrepresentation" or omission communicated by The Wang Center was not reasonable. *See Saint Consulting Grp., Inc. v. E. Ins. Grp., LLC*, No. MICV201202218H, 2015 WL 2062202, at *9 (Mass. Super. Feb. 25, 2015), judgment entered sub nom. The Saint Consulting Grp., Inc. v. E. Ins. Grp. LLC (Mass. Super. 2015) (Plaintiff's reliance was not reasonable as a matter of law where the representations were "specifically contradicted by the terms of the written contract.").

20 *See* The Wang Center's website, available at https://www.bochcenter.org/ (The Wang Center's core mission is providing performing arts entertainment and cultural education experiences to diverse audiences).

21 *See also Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc*., 398 Mass. 480, 492-93 (1986) (holding that plaintiff's 93A claim against Planned Parenthood was foreclosed because "the Legislature intended to exclude the activities engaged in by a [charitable] corporation such as PP, Inc. from the reaches of c. 93A."); *Squeri v. Mount Ida Coll*., 954 F.3d 56, 72 (1st Cir. 2020) (93A claim did not apply to college that was a nonprofit); *Linkage Corp. v. Trustees of Boston Univ*., 425 Mass. 1, 23, 26 (1997) (It is well established law that while "[a]n entity's 'status as a charitable corporation is not ... dispositive of the issue whether ch. 93A applies[,]' [i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission.").

22 Plaintiff's 93A claim should also be dismissed because it is based on the same conduct forming the basis of his misrepresentation and breach of contract claims – both of which fail. *See Hallmark Inst. of Photography, Inc.*, 518 F. Supp. 2d at 332 ("Hallmark's claim under Chapter 93A must be dismissed since it has failed to establish any breach of contract, misrepresentation, or other actionable conduct by CollegeBound.").

23 It is unclear what distinction is meant by a "de facto" and "de jure" disability, given that neither term is used in connection with ADA claims under 1st Circuit case law.

24 He also alleges – rather confusingly – that "by definition, it is the masking policy itself which leads to disability, and which would evaporate with the termination of the policy or exemption to it." Compl. 107. In making this allegation, Plaintiff implicitly acknowledges that the "impairment" he experiences is transitory, which undercuts his claimed disability. See Parks v. Port of Oakland, 2017 WL 2840704, at *4 (N.D. Cal. July 3, 2017) (stating that in determining whether an impairment "substantially limits" a major life activity, courts should take into account "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impacted ...").

25 Some courts have taken the contrary position that it is unnecessary for plaintiffs to fully exhaust their administrative remedies prior to bringing claims alleging public accommodations violations. *See Peters v. Bos. Properties, Inc.*, No. 2084CV02447, 2021 WL 3493907, at *3 (Mass. Super. June 15, 2021) (collecting cases). However, in *Peters*, as in other cases in which the court opined that prior exhaustion of administrative remedies was not a bar to a plaintiff's claims, the plaintiff did in fact proceed with some administrative process prior to bringing a civil

suit. In *Peters*, for example, although the plaintiff failed to file a prior MCAD charge of discrimination against some of the defendants, plaintiff had filed a verified charge as to other defendants which resulted in MCAD issuing a finding of probable cause against them. *Id*. Thus – unlike here – MCAD had already served its gating function and deemed plaintiff's civil rights claim legitimate, at least in part.