UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| MICHAEL BUSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-10473-NMG |
| ) | |
| THE WANG CENTER FOR THE ) | |
| PERFORMING ARTS, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
[Docket No. 16]

October 31, 2022

Boal, M.J.

In this action, pro se plaintiff Michael Bush alleges that defendant The Wang Center for the Performing Arts d/b/a Boch Center ("Boch Center") engaged in wrongful and discriminatory conduct by implementing policies requiring individuals over the age of 12 attending the Boch Center performances and events to wear face masks, show proof of vaccination, and/or provide negative COVID-19 tests. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Boch Center has moved to dismiss Bush's First Amended Complaint. Docket No. 16.[1] This Court heard oral argument on August 10, 2022. For the following reasons, I recommend that Judge Gorton grant the Boch Center's motion to dismiss.

---

[1] On June 1, 2022, Judge Gorton referred the motion to the undersigned. Docket No. 26.

I.      SCOPE OF THE RECORD

   A.      References To Other Bush Lawsuits

   In its motion to dismiss, the Boch Center refers to and/or relies upon matters not included in Bush's First Amended Complaint.  Bush objects to the Court's consideration of the Boch Center's reference to two other lawsuits Bush has filed in this Court.  Docket No. 18-1 at 2-3.[2] Bush is correct that, ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into a motion for summary judgment.  Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  It is well-accepted, however, that federal courts may take judicial notice of other court proceedings, if those proceedings have relevance to the matters at hand.  See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990).  In any event, the Boch Center only states that this is one of several cases brought by Bush raising similar issues.  Docket No. 47-1 at 3.[3]  To the extent that Bush objects to the Boch Center's characterization of those cases, this Court does not rely on such characterizations.

   B.      References To The Tickets And Ticketmaster's Terms And Conditions

   In support of its motion to dismiss, the Boch Center submitted an affidavit by Michael Szczepkowski dated May 3, 2022 (the "May 3 Szczepkowski Aff.").  Docket No. 17-1.  That

---

[2] Bush argued that the Boch Center's original memorandum of law did not comply with Local Rule 7.1(b)(4), which provides that memoranda in support of a motion shall not exceed 20 pages double-spaced, because the footnotes are single-spaced.  Docket No. 18-1 at 1.  Local Rule 5.1(a)(2), however, provides that footnotes need not be double-spaced.

[3] After the hearing on this motion, the Boch Center filed an amended memorandum of law in support of its motion to dismiss.  Docket No. 47-1.  Bush objects to consideration of this amended memorandum because it was filed without leave of court.  See Docket No. 49 at 1, 3. Bush is correct that the Boch Center should have sought leave of court before filing this amended memorandum.  See Local Rule 7.1(b)(3).  Nevertheless, because it corrects statements that were not accurate, this Court will consider the amended memorandum.

affidavit purported to attach copies of the tickets purchased by Bush for the Il Divo "For Once in My Life" Tour show and the Cirque Dream Holidaze Show.  May 3 Szczepkowski Aff. at ¶ 2. However, the affidavit attached only a copy of the Il Divo ticket.  At oral argument, counsel for the Boch Center stated that they had intended to attach copies of both tickets.  Accordingly, after the hearing, this Court entered the following order:

> In support of its motion to dismiss, defendant The Wang Center for the Performing Arts d/b/a Boch Center ("Boch Center") submitted the affidavit of Michael Szczepkowski (Docket No. 17-1).  The affidavit states that copies of the tickets purchased by plaintiff Michael Bush for the Il Divo "For Once in My Life Tour" show and the Cirque Dream Holidaze show are attached to it as an exhibit.  However, a copy of the Il Divo ticket only was attached to the affidavit.  If the Boch Center wishes for this Court to consider the Cirque Dream Holidaze show ticket in connection with its motion to dismiss, it shall file a copy of such ticket by Friday, August 12, 2022.  Plaintiff may, but need not, file a response by August 19, 2022.

Docket No. 44.

On August 12, 2022, the Boch Center filed an amended and supplemental affidavit by Mr. Szczepkowski (the "August 12 Szczepkowski Aff.").  Docket No. 46.  Instead of submitting a copy of the Cirque Dream Holidaze show ticket with the affidavit, the Boch Center submitted a copy of a ticket to the show Million Dollar Quartet at the Boch Center Shubert Theater.  Mr. Szczepkowski explained that:

> The format and terms and conditions of this ticket are the same as the format and terms and conditions of the ticket Michael Bush purchased for the Cirque Dreams Holidaze show for the Boch Center Shubert Theatre, including the statement that "[t]o the extent permitted by law, the Management reserves the right to refund the price printed on the face hereof and to revoke any rights granted herein."  We were unable to locate a copy of the ticket Michael Bush purchased for the Cirque Dreams Holidaze show because the ticketing system does not ordinarily store copies of tickets for past events.

August 12 Szczepkowski Aff. at ¶ 3.

This Court will consider the Il Divo ticket.  When, as here, "a complaint's factual

3

allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (citations omitted).  Here, Bush has not disputed the authenticity of the Il Divo ticket, he refers to it in the First Amended Complaint, and it is central to his claims.  Similarly, the full terms and purchase policy found at www.ticketmaster.com are incorporated by reference in that ticket.  See, e.g., Druyan v. Jagger, 508 F.Supp.2d 228, 236 (S.D.N.Y. 2007) (considering Ticketmaster's online terms of use in connection with motion to dismiss).  Therefore, consideration of these materials is proper.

This Court will not, however, consider Ticketmaster's Event Safety page.  See Docket No. 47-1 at 6, n.8.  That page does not appear to be part of the alleged contract and there is no reference to the Event Safety Page in the ticket or Ticketmaster's Terms of Use.  This Court also will not consider the Million Dollar Quartet ticket filed after the hearing as it is not the actual ticket purchased by Bush.  Accordingly, these materials do not fall under any of the exceptions to the rule that this Court may not consider materials outside of the complaint, or not expressly incorporated therein.

II.     FACTUAL BACKGROUND[4]

The Boch Center is a nonprofit corporation organized under the laws of the Commonwealth of Massachusetts.  First Amended Complaint ("FAC") at ¶ 3.  Bush had attended shows at the Boch Center a number of times over the years.  Id. at Introduction.  After

---

[4] Because this matter is before the Court on a motion to dismiss for failure to state a claim, the Court "recite[s] the facts as alleged in the plaintiff['s] complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the non-moving party."  Abdisamad v. City of Lewiston, 960 F.3d 56, 57 (1st Cir. 2020) (quoting Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020)).

the Boch Center closed its theaters in response to the government's orders regarding the COVID-19 pandemic, Bush was relieved when the Boch Center reopened its theaters and announced shows would resume in the second half of 2021.  Id.

On July 11, 2021, Bush purchased tickets online to the Il Divo "For Once In My Life" Tour show to be held at the Boch Center Wang Theatre on September 3, 2021.  Id. at ¶ 5.[5]  On July 25, 2021, Bush purchased tickets online to the Cirque Dreams Holidaze show to be held at the Boch Center Shubert Theatre on December 11, 2021.  Id. at ¶ 4.  Bush purchased the tickets with the intention to attend both shows with his wife.  Id. at ¶ 8.

The Il Divo ticket purchased by Bush states that the "ticket is a revocable license to attend the event listed on the front of the ticket" which is "subject to the full terms found at www.ticketmaster.com."  Ex. A to the Affidavit of Michael Szczepkowski (Docket No. 17-1) ("Szczepkowski Aff.").  Ticketmaster's Terms are publicly available and accessible to consumers via its website and state that customers "[e]xpressly agree to the[] Terms" by "visiting or using [Ticketmaster's] Site."  See Terms, available at https://help.ticketmaster.com/s/article/Terms-of-Use?language=en_US (last accessed June 8, 2022).[6]  The Terms contain a number of provisions that apply to the purchase of tickets, including provisions applicable to "Event Organizer[s]," defined as those who provide events, such as artists, venues, teams, fan clubs, promoters, and leagues."  See Purchase Policy, § 3, available at https://help.ticketmaster.com/s/article/Purchase-Policy?language=en_US (last

---

[5] That show was subsequently rescheduled to February 22, 2022.  FAC at ¶ 9.

[6] The Terms currently available on Ticketmaster's website state that they were last updated on July 2, 2021, before Bush purchased tickets for the Boch Center's shows on July 11 and July 25, 2021.

accessed June 8, 2022).[7]  The Terms contain a limitation of liability clause which states, in

relevant part:

> IN NO EVENT WILL [TICKETMASTER] OR OUR EVENT
> ORGANIZERS . . . BE RESPONSIBLE OR LIABLE TO YOU OR
> ANYONE ELSE FOR, AND YOU HEREBY KNOWINGLY AND
> EXPRESSLY WAIVE ALL RIGHTS TO SEEK, DIRECT, INDIRECT,
> INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY
> TYPE, AND ANY RIGHTS TO HAVE DAMAGES MULTIPLIED OR
> OTHERWISE INCREASED, ARISING OUT OF OR IN CONNECTION
> WITH THE SITE, THE CONTENT, OR ANY PRODUCT OR SERVICE
> PURCHASED THROUGH THE SITE, EVEN IF WE HAVE BEEN
> ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND
> REGARDLESS WHETHER THE CLAIM IS BASED UPON ANY
> CONTRACT, TORT, OR OTHER LEGAL OR EQUITABLE THEORY.

Terms, § 15.  The Purchase Policy also contains a limitation of liability provision, which states,

in relevant part:

> You assume all risks, hazards, and dangers arising from or relating in any
> way to the risk of contracting a communicable disease or illness—
> including, without limitation, exposure to COVID-19 or any other bacteria,
> virus, or other pathogen capable of causing a communicable disease or
> illness, whether that exposure occurs before, during, or after the event, and
> regardless of how caused or contracted—and you hereby waive any and all
> claims and potential claims against Ticketmaster, Live Nation, and the
> Event Organizer—and against any companies affiliated with Ticketmaster,
> Live Nation, or the Event Organizer—relating to such risks, hazards, and
> dangers.

Purchase Policy, § 17.  In addition, the Purchase Policy provides that Bush would "agree to

comply with all of the Event Organizer's applicable rules, policies, terms and conditions ('Event

Organizer Rules')" and that the Boch Center reserved the right "to refuse admission to, or eject,

any person . . . who fails to comply with Event Organizer rules."  Id. at § 18.

　　　　Bush alleges that nowhere in the Boch Center's promotional emails or the online

---

[7] The Purchase Policy states that it was last updated January 1, 2021, also before Bush purchased
the tickets at issue here.

purchase process was it disclosed to him that the Boch Center would require him to undergo vaccinations, medical tests, and/or have to wear a mask in order to attend the shows.  Id. at ¶ 6. According to Bush, had the Boch Center disclosed such requirements to Bush prior to and/or during the purchase process, he would not have purchased the tickets.  Id. at ¶ 7.

On August 20, 2021, in response to the continued risks posed by COVID-19 and in particular by the Delta variant, the City of Boston issued an order requiring all persons to wear a mask or face covering that covers their nose and mouth whenever they were indoors on the premises of "a business, club, place of assembly or other place that is open to members of the public, including but not limited to retail establishments, restaurants, bars, performance venues, social clubs, event spaces, and municipal buildings."  Ex. 4 to FAC.  The order took effect at 8:00 a.m. on August 27, 2021.  Id.

On August 23, 2021, the U.S. Food and Drug Administration ("FDA") granted and announced formal approval to Pfizer's COMIRNATY COVID-19 vaccine.  FAC at ¶ 10.  Also on August 23, 2021, the Boch Center sent an email to Bush announcing that, effective September 14, 2021, it would require all patrons to be fully vaccinated or provide a negative COVID test taken within 72 hours of the show.  Id. at ¶ 11 and Ex. 2.  Guests would be asked to show their vaccination card or test results and a government ID prior to entering an event at the Boch Center's theaters.  Id.  In addition, consistent with the City of Boston's orders, masks would be required for all guests, regardless of vaccination status.  Id.

Bush alleges that he was "shocked and dismayed" by the Boch Center's policy regarding vaccination and masks, which "caused him to experience anxiety, sadness, and despair."  Id. at ¶ 12.  He further alleges that he has a medical condition that prevents him from wearing a face

mask.  Id.[8]  In addition, he alleges that the Boch Center's policy did not allow for any of the exemptions listed in the Boston Public Health Commission's order for mask wearing, including for people who due to disability are unable to wear a mask.  Id. at ¶¶ 15-16.

On December 2, 2021, Bush was "shocked and dismayed" to receive an email from the Boch Center with the subject line "Important Safety Information for Cirque Dreams Holidaze." Id. at ¶ 60.  The email contained the Boch Center's health, vaccine and entry policy, including the requirement that all guests wear masks and that patrons over the age of 12 must be fully vaccinated with an FDA or WHO authorized vaccine or provide a negative COVID test, taken within 72 hours, to attend shows at the Boch Center's theaters.  Ex. 12 to FAC.

On January 5, 2022, Bush received a third email from the Boch Center announcing its new COVID-19 Policy and Safety Measures.  FAC at ¶ 72 and Ex. 14.  Starting January 15, 2022, "per the City of Boston's new vaccine requirement for indoor spaces," in order to enter the Boch Center's theaters, patrons over the age of 12 had to be fully vaccinated and were required to wear masks in the theaters.  Id.

After learning of the Boch Center's COVID-19 policies, Bush informed the Boch Center that he intended not to comply with the policies and was subsequently issued a refund of the purchase price of his tickets.  FAC at Introduction and ¶ 56.[9]  Bush claims that the Boch Center's refund "caused him to experience severe anxiety, sadness, humiliation, and despair."  Id. at ¶ 59. Bush takes issue with the Boch Center's COVID-19 policies contending that they are false and

---

[8] Bush attached to the complaint a letter from John Diggs MD stating that he had found Bush "to have contraindications to mask wearing for a private medical condition."  Ex. 3 to FAC.

[9] See also Docket No. 49 at 2.  According to Bush, he was issued a refund of the Cirque Holidaze show before the show took place while the Il Divo show ticket was refunded after the show was rescheduled and later cancelled.  Id.

misleading and that they "unfairly discriminate[] against [him] for his naturally-acquired immunity" and disability.  Id. at ¶¶ 12, 23, 41-48.  Specifically, Bush claims to have "naturally-acquired immunity to SARS-Co V-2/COVID-19 [which] confers resistance to re-infection superior to and protection from COVID-19 disease lasting longer than that conferred by 'COVID-19 vaccinations,'" and claims to have a disability based on the fact that his "physician has specifically advised him against the wearing of face masks."  Id. at ¶¶ 12, 21, 99.

The First Amended Complaint contains nine counts: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) misrepresentation; (4) violation of M.G.L. Chapter 93A; (5) violation of the American with Disabilities Act ("ADA") (De Jure Disability); (6) violation of the ADA (De facto Disability); (7) violation of M.G.L. c. 272 §§ 92A and 98; (8) negligent infliction of emotional distress; and (9) violation of 18 U.S.C. § 242 and 42 U.S.C. § 1983.[10]

On May 3, 2022, the Boch Center filed a motion to dismiss, Docket No. 16, which Bush opposed.  Docket No. 18.  The Boch Center filed a reply on June 15, 2022.  Docket No. 34. After the hearing on the motion to dismiss, the Boch Center filed a supplemental and corrected memorandum as well as notices of supplemental authorities.  See Docket Nos. 46, 47, 48, 51. Bush responded to the Boch Center's filings.  See Docket Nos. 49, 50, 52.

III.   ANALYSIS

A.   Standard Of Review

A complaint must contain only "a short and plain statement of the claim showing that the

---

[10] In his opposition to the Boch Center's motion to dismiss, Bush acknowledged that the Court should dismiss his negligent infliction of emotional distress and 18 U.S.C. § 242 claims.  Docket No. 18-1 at 11.  Accordingly, I recommend that Judge Gorton grant the motion to dismiss with respect to those claims.

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Abdisamad, 960 F.3d at 59 (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id. (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the Court must first "strip away and discard the complaint's conclusory legal allegations."  In re Montreal, Maine & Atlantic Railway, Ltd., 888 F.3d 1, 6 (1st Cir. 2018) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)).  The Court must then "determine whether the remaining facts allow it 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016)).

B.     Bush Has Not Sufficiently Alleged His Contract Claims

Count I of the Complaint asserts a breach of contract claim.  "To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016) (citation omitted).  "To survive a motion to dismiss, a plaintiff must do more than allege, in a conclusory manner, that defendant breached a contractual duty." Haglund v. Estee Lauder Cos., Inc., 466 F.Supp.3d 292, 298 (D. Mass. 2020) (Gorton, J.) (citing Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007)).  "Instead, a plaintiff must describe, with 'substantial certainty,' the specific contractual promise that defendant breached." Id. (citations omitted).

Bush alleges that after he purchased the tickets, the Boch Center imposed a requirement that guests show proof of COVID vaccination or a negative COVID test and wear masks and that such requirements breached the contract between Bush and the Boch Center.  See FAC at ¶¶ 77-82.  Bush has failed, however, to identify any specific contractual provisions that the Boch Center allegedly breached.  He has not pointed to any terms that either mandated that the Boch Center allow entry into its shows without being subject to the Boch Center's policies and protocols, or prohibited the Boch Center from reimbursing Bush for his tickets upon his objection to its policies.[11]  Instead, Bush argues that the Boch Center's policies violate his civil rights.  See Docket No. 18-1 at 3-5.  Such allegations do not give rise to a breach of contract claim.

Bush's failure to identify any duty or obligation on the part of the Boch Center that was breached also warrants dismissal of his implied covenant claim (Count II) because the implied covenant regulates only the manner of performance and "may not be 'invoked to create rights and duties not otherwise provided for in the existing contractual relationship.'"  Ayash v. Dana Farber Cancer Institute, 443 Mass. 367, 385 (2005) (quoting Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004)).  As he has not alleged a breach of contract under the facts alleged in his complaint, there can be no breach of the implied covenant either.  See, e.g., Godines v. EF Explore Am., Inc., No. 2184CV1327, 2021 WL 7085170, at *6 (Mass. Super. Dec. 20, 2021); see also Edlow v. RBW, LLC, 688 F.3d 26, 35 (1st Cir. 2012) ("Because [defendant] was not obligated under the contract to provide the amenities, it could not have

---

[11] At least with respect to the Il Divo ticket, the ticket expressly states that it constitutes a revocable license to attend the event listed.  See Docket No. 17-2 at 2.  In addition, the Purchase Policy states that the purchaser agrees "to comply with all of the Event Organizer's applicable rules, policies, terms, and conditions."  Purchase Policy at § 18.

breached the covenant as to them, and the claims regarding them necessarily fail.").

Accordingly, I find that Bush has failed to state a claim for breach of contract or breach of the

covenant of good faith and fair dealing.[12]

    C.    <u>Bush Has Failed To State A Claim For Misrepresentation</u>

Bush's complaint fails to sufficiently plead a claim of intentional misrepresentation

(Count III).  In order to prove such a claim, Bush must show that (1) the Boch Center made a

false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of

inducing Bush to act in reliance thereon, (4) Bush relied upon the representation, and (5) Bush

acted to his detriment.  <u>Armstrong v. Rohm and Haas Co., Inc.</u>, 349 F.Supp.2d 71, 81 (D. Mass.

2004) (citing <u>Reisman v. KPMG Peat Marwick LLP</u>, 57 Mass. App. Ct. 100, 108-109 (2003)).

Bush's intentional misrepresentation claim is subject to the requirements of Rule 9(b) of the

Federal Rules of Civil Procedure. <u>See</u> <u>N. Am. Catholic Educ. Programming Found., Inc. v.</u>

<u>Cardinale</u>, 567 F.3d 8, 15 (1st Cir. 2009) (citation omitted) (Rule 9(b)'s particularity requirement

applies not only to actual fraud claims but also to "associated claims where the core allegations

effectively charge fraud.").  Rule 9(b) requires that a plaintiff's averments of fraud specifically

plead the time, place, and content of the alleged false representation.  <u>Mulder v. Kohl's Dep't</u>

<u>Stores, Inc.</u>, 865 F.3d 17, 22 (1st Cir. 2017).

---

[12] The Boch Center also argues that the limitation of liability clause contained in the Terms and Conditions bars Bush's contract (and other claims).  Docket No. 47-1 at 10-11.  This Court notes that, on the record appropriately before this Court, there is no indication that the limitation of liability clause applies to the Cirque Dreams Holidaze show.  In addition, though not raised by Bush, whether or not such a limitation of liability is enforceable is a complicated issue that raises issues of fact not appropriate for a motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>Kauders v. Uber Technologies, Inc.</u>, 486 Mass. 557 (2021); <u>Small Justice LLC v. Xcentric Ventures LLC</u>, 99 F.Supp.3d 190 (D. Mass. 2015).  Among other things, this Court would need to know whether Bush was required to affirmatively check a box indicating acceptance of Ticketmaster's terms and conditions or whether the website simply indicated that by using it, Bush was agreeing to the terms and conditions.  Accordingly, I decline to recommend dismissal on this basis.

Bush does not allege any particular false statement by the Boch Center, let alone with the specificity required by Rule 9(b).  Rather, he makes conclusory statements that the Boch Center "made materially false representations" to him.  FAC at ¶ 88.  His complaint appears to allege that the Boch Center failed to disclose to Bush that he would have to wear a mask and undergo COVID testing or submit proof of vaccination in order to attend the shows prior to Bush purchasing the tickets.  See FAC at ¶¶ 6, 7.  "Fraud by omission requires both concealment of material information and a duty requiring disclosure."  Squeri v. Mount Ida College, 954 F.3d 56, 70 (1st Cir. 2020) (quoting Sahin v. Sahin, 435 Mass. 396, 402 n.9 (2001)).  A duty to disclose arises where "(i) there is a fiduciary duty or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction."  Id. at 71.  Bush does not allege any facts that would support a duty to disclose by the Boch Center.

In addition, statements regarding possible future conditions will not give rise to a misrepresentation claim.  See Rodden v. Savin Hill Enters., LLC, 33 Mass. L. Rptr. 442, at *6 (Mass. Super. 2016) (citing cases).  Bush does not allege, for example, that the Boch Center knew at the time Bush purchased the tickets that it would later require adherence to COVID-19 policies.

Finally, Bush appears to argue that his misrepresentation claim is based, in part, on the Boch Center's statements regarding the Boston Health Public Order and the efficacy and safety of COVID-19 vaccines and face masks.  Docket No. 18-1 at 5-6.  In his complaint, however, Bush has failed to allege that the Boch Center made any representations regarding the Boston Health Public Order or the efficacy and safety of COVID-19 vaccines and face masks.  To the

extent that Bush alleges that the Boch Center stated that its policies were intended to stop the spread of COVID-19 and that such claim is false, see FAC at ¶¶ 67-68, Bush has failed to allege reliance on those alleged representations.  Therefore, Bush has failed to sufficiently plead an intentional misrepresentation claim.

       D.     <u>Bush Has Not Sufficiently Pled A Chapter 93A Violation</u>

As pled, Bush's Chapter 93A claim is based on the same alleged facts and theories on which he relied to support his other claims.  See FAC at ¶ 94.  He has failed to set forth any separate arguments or theories in support of his Chapter 93A claim.  Because all of Bush's claims fail as a matter of law as set forth in this opinion, his Chapter 93A claim, which is derivative of those claims, also fails.  See, <u>e.g.</u>, <u>Thout v. Deutsche Bank Nat'l Trust Co. Trustee of the Residential Securitization Trust 2006-G</u>, 369 F.Supp.3d 318, 324 (D. Mass. 2019); <u>see also</u> <u>Askenazy v. Tremont Group Holdings, Inc.</u>, 29 Mass. L. Rptr. 340, at *17 (Mass. Super. 2012) (citations omitted) ("Where chapter 93A claims are derived solely from the same operative facts as other failed common law and statutory claims, courts refuse to impose c. 93A liability.").  Accordingly, Bush has failed to state a Chapter 93A claim.[13]

---

[13] The Boch Center also argues that Chapter 93A does not apply to it because it is a charitable institution and the COVID-19 policies forming the basis of Bush's claim were made in the context of furthering the Boch Center's core mission of providing performing arts entertainment. Docket No. 17 at 14.  It is true that a nonprofit defendant will not be considered engaged in trade or commerce and therefore outside of the reach of Chapter 93A when it "undertakes activities in furtherance of its core mission." <u>Kunelius v. Town of Stow</u>, 588 F.3d 1, 18 (1st Cir. 2009) (citation omitted).  However, the determination of whether a nonprofit defendant is beyond the reach of Chapter 93A is a "fact-specific . . . inquiry." <u>Id.</u>  Here, the facts regarding the Boch Center's core mission are not contained in the complaint and this Court may not take judicial notice of such facts.  Accordingly, this argument presents issues of fact not appropriately resolved on a motion to dismiss and this Court declines to recommend dismissal on this basis.

E.      Bush Has Failed To Sufficiently Allege That He Is Disabled Within The Meaning
        Of The ADA And The Massachusetts Public Accommodation Statutes

In Counts V and VI of the First Amended Complaint, Bush asserts that the Boch Center

violated the ADA.[14]  To state a claim under the ADA in the context of public accommodations,

the plaintiff must show that: "(1) [that] he or she is disabled within the meaning of the ADA; (2)

that the defendants own, lease, or operate a place of public accommodation; and (3) that the

defendants discriminated against the plaintiff within the meaning of the ADA."  Marradi v.

K&W Realty Investment LLC, 212 F.Supp.3d 239, 245 (D. Mass. 2016) (Gorton, J.) (citations

omitted).  The Boch Center argues that Bush has not sufficiently pled that he is disabled within

the meaning of the ADA.  Docket No. 17 at 14-17.  I agree.

A person has a disability within the meaning of the ADA if (1) he or she has a "physical

or mental impairment that substantially limits one or more major life activities;" (2) "a record of

such an impairment;" or (3) is "regarded as having such an impairment."  Mancini v. City of

Providence, 909 F.3d 32, 39 (1st Cir. 2018) (quoting 42 U.S.C. §12102).  Bush argues that he

has sufficiently pled a disability under the first and third definitions.  See Docket No. 18-1 at 7-8.

In order to establish a physical impairment under the first definition, Bush must show that

(1) he suffers from a physical or mental impairment, (2) which substantially limits (3) major life

activities of central importance such as "caring for oneself, performing manual tasks, seeing,

hearing, eating, sleeping, walking, standing, [and] sitting."  See Medina-Rodriguez v. Fernandez

Bakery, Inc., 255 F.Supp.3d 334, 341-342 (D.P.R. 2017).  A plaintiff bringing a "regarded as"

claim under the ADA needs to plead and prove that he was regarded as having a physical or

mental impairment.  Mercado v. Puerto Rico, 814 F.3d 581, 588 (1st Cir. 2016).  In his

_____

[14] Count V asserts a "de jure" disability while Count VI asserts a "de facto" disability.  FAC ¶¶
98-109.  It is unclear what Bush means as no such distinction exists in the ADA.

complaint, Bush alleges only that he has "a medical condition that prevents him from wearing a mask," and has submitted a letter from a physician stating that he has "contraindications to mask wearing for a private medical condition."  FAC at ¶ 12 and Ex. 3.  Bush identifies no physical or mental impairment let alone one that substantially limits one or more of his major life activities. He also fails to allege that the Boch Center regarded him as having a physical or mental impairment.  Bush has therefore failed to sufficiently allege that he is an individual with a disability within the meaning of the ADA.

Bush also brings claims under the Massachusetts Public Accommodation Statutes, M.G.L. c. 272 §§ 92A and 98.  FAC ¶¶ 110-113.  "The public accommodation statutes, G.L. c. 272, §§ 92A and 98, prohibit discrimination on the basis of sex, among other factors, in relation to the admission of or treatment of any person in a place of public accommodation."  Donaldson v. Farrakhan, 436 Mass. 94, 97 (2002).  "Interpretation of Massachusetts Public Accommodation Statute proceeds 'hand in hand' with the interpretation of the Americans with Disabilities Act and the Rehabilitation Act."  Lesley v. Chie, 81 F.Supp.2d 217, 226 (D. Mass. 2000) (citation omitted).  Therefore, Bush's failure to allege a disability within the meaning of the ADA is also fatal to his public accommodation statute claims.

F.     Bush Has Not Alleged That He Ever Requested Or Was Denied A Reasonable Accommodation By The Boch Center

Because the challenged policies apply equally to disabled and non-disabled individuals, Bush has not alleged any facts supporting a facial theory of intentional discrimination.  See Fuog v. CVS Pharmacy, Inc., No. 20-337 WES, 2021 WL 4355402, at *4 (D.R.I. Sept. 24, 2021) (citing Young v. Facebook, Inc., 790 F.Supp.2d 1110, 1116 (N.D. Cal. 2011)).  Therefore, Bush can only proceed on either a disparate impact under the meaningful access standard, or a failure to provide a necessary and reasonable accommodation.  Id.  Bush appears to be proceeding on a

failure to provide a reasonable accommodation theory.  See Docket No. 18-1 at 7-8.

Title III of the ADA requires "reasonable modifications" as "necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities. . ." 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(ii).  "To establish a prima facie reasonable accommodation claim, a plaintiff must show that the requested modification is both 'reasonable' and 'necessary' to accommodate the plaintiff's disability." Fuog, 2021 WL 4355402 at *5 (citations omitted).  Plaintiff must show that the defendant "has refused to affirmatively accommodate [the disabled person's] disability where such accommodation was needed to provide 'meaningful access to a public service.'" Id. (citations omitted).

Bush does not allege that he ever requested and was denied a reasonable accommodation. Rather, he demanded that the Boch Center rescind its policies entirely. FAC at ¶¶ 73, 100, 101, 102 and Ex. 9.  Such a request cannot form the basis of a reasonable accommodation claim. See, e.g., Fuog, 2021 WL 4355402, at *6.  Accordingly, Bush's ADA claims are dismissable on this basis too.

G.     Bush Has Failed To Allege A Section 1983 Claim

Count IX of the First Amended Complaint asserts a claim under 42 U.S.C. § 1983. Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State . . .'" Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982)).  Therefore, a plaintiff claiming a Section 1983 violation must allege that a person or persons acting under color of state law deprived him of a federal or statutory right. Id. (citing Rockwell v. Cape Cod Hosp., 26 F.3d 254, 256 (1st Cir. 1994)).  If a plaintiff fails to allege facts

sufficient to establish either the deprivation of a federal right or that the defendant acted under color of state law, then the Section 1983 claim is subject to dismissal.  Id.

Here, Bush bases his Section 1983 claim on the Boch Center's alleged violation of the ADA.  Docket No. 18-1 at 11.  However, "Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages."  M.M.R.-Z ex rel. Ramirez-Senda v. Puerto Rico, 528 F.3d 9, n.3 (1st Cir. 2008) (citations omitted).  Therefore, Bush has failed to allege the deprivation of a federal right cognizable under Section 1983.

In addition, the Boch Center is a private entity.  See FAC at ¶ 3.  In order for the Boch Center to have acted under color of state law, its actions must be "fairly attributable to the state." Estades-Negroni, 412 F.3d at 4 (citing Lugar, 457 U.S. at 937).  "In other words, it must be fair to characterize [it] as [a] state actor[]."  Id.

"It is '[o]nly in rare circumstances' that private parties can be viewed as state actors."  Id. (citing Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)).  The First Circuit has employed three tests to determine whether a private party fairly can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test.  Id. (citations omitted).  Bush argues that the Boch Center can be viewed as a state actor under the state compulsion test and the nexus/joint action test.  Docket No. 18-1 at 13.

"Under the state compulsion test, a private party is fairly characterized as a state actor, when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'"  Estades-Negroni, 412 F.3d at 5 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). Although Bush alleges that the Boch Center justified the enactment of its mask and vaccination policy based on the City of Boston's Health Commission's order, FAC at ¶¶ 127, 130, he is not

challenging in this case the City of Boston's mask and vaccination mandate itself and he has not alleged any facts to show that the City of Boston coerced the Boch Center into implementing or enforcing the Boch Center's own mask and vaccination or test policies.  See, e.g., Manning v. Whole Foods Market Group, Inc., No. 21-cv-10833-ADB, 2022 WL 194999, at *4 (D. Mass. Jan. 21, 2022).

Similarly, Bush has failed to plead sufficient facts to justify a finding of state action under the nexus/joint action test.  Bush has failed to plead facts that, if true, would show that the state "so far insinuated itself into a position of interdependence with [the Boch Center] that it [should be considered] a joint participant in" the Boch Center's actions with respect to its COVID-19 policies.  Estades-Negroni, 412 F.3d at 6; see also Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994) (noting that "government regulation, even extensive regulation, . . . [is] insufficient to establish" that a private party acted under color of state law.).  Accordingly, I find that  Bush's Section 1983 is also subject to dismissal.

IV.    RECOMMENDATION

For the foregoing reasons, this Court recommends that Judge Gorton grant the Boch Center's motion to dismiss.

V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court

of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P.

72(b) will preclude further appellate review of the District Court's order based on this Report

and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge